## RUCKER *v* WHEELER.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

No. 1306. Submitted January 9, 1888. — Decided April 16, 1888.

In the courts of the United States the presiding judge may, in submitting a case to the jury, express his opinion on the facts; and when no rule of law is incorrectly stated, and all matters of fact are ultimately submitted to the jury, such expression is not reviewable on writ of error.

In this case there was no error in the charge of the court to the jury.

THE case as stated by the court was as follows:

The cause of action set out in the first count of the complaint is, that the defendant in error, who was the defendant below, agreed with the plaintiff in error that if the latter assisted the former and his agents, in purchasing the interest of Julia Webber in the Emma lode mining claim at a price not exceeding forty thousand dollars, he should receive for his services the sum of ten thousand dollars, but only five thousand dollars if the defendant was compelled to pay more than forty thousand dollars for said interest. The complaint alleges that, in consequence of services rendered by the plaintiff under that agreement, the defendant was, on the 22d of November, 1884, enabled to buy said interest at a sum exceeding forty thousand dollars, whereby the latter became indebted to plaintiff in the sum of five thousand dollars.

The defendant in his answer denies that he made any such agreement as that alleged, or that he was enabled to purchase the interest of Julia Webber, by reason of any services rendered by the plaintiff.

The second count of the complaint sets forth the following cause of action:

On the 29th of November, 1882, one Henry Webber was the owner of an undivided $\frac{20}{60}$ of the Emma lode mining claim in Colorado, one Archie C. Fisk being the owner of $\frac{28}{60}$, and Charles F. Abbey the owner of the remaining $\frac{12}{60}$. In 1883 Fisk commenced proceedings under the statutes of the United States in advertising the interest of Webber "out of said claim" on account of alleged non-payment of assessment work done by Fisk on said claim in 1882. After the period of the publication of said advertisement, Fisk asserted ownership of $\frac{48}{60}$ of said mining claim.

On the 20th of November, 1883, Fisk leased to Abbey said $\frac{48}{60}$. Webber, desiring to secure possession of said claim, procured from Abbey, November 26, 1883, a lease in the name of Nevitt, his brother-in-law, of an undivided $\frac{16}{60}$, the latter being the nominal and Webber the real owner of the lease. On the 18th of April, 1884, the defendant, Wheeler, by conveyances, had become the owner of all the interest claimed by Fisk. During the same month Webber commenced suit against the grantor of Wheeler, and the administrator and heirs-at-law of Abbey, to recover his interest of $\frac{20}{60}$ in said premises.

On the 28th of April, 1884, Webber gave to the plaintiff, Rucker, a quit-claim deed in and to an undivided one-twelfth interest ($\frac{5}{60}$) in said mining claim, as his compensation for legal services rendered and to be rendered in the prosecution of said action. In the same year Wheeler and the administrator and heirs-at-law of Abbey commenced an action against Nevitt for the possession of said premises, and to restrain him and his agents from working and mining the same.

At the time the quit-claim deed was made to Rucker, it was agreed between him and Webber that Rucker's interest would not be subject to the burden of the lease made by Abbey to Nevitt. In consideration of that deed and agreement the plaintiff entered upon the performance of the legal services necessary to establish Webber's title to said interest of $\frac{20}{60}$.

On the 26th of September, 1884 — the defendant being then the owner of both the Abbey and Fisk interests in said claim — the plaintiff, for and on behalf of Webber, and acting

nominally for Webber, together with the defendant's attorney, prepared a written agreement, which was signed and executed by Webber, Nevitt, and the defendant. It had for its object the compromise of the pending litigation between the parties. That agreement was as follows:

" This agreement, made and entered into on this 26th day of September, A.D. 1884, by and between J. B. Wheeler, of the first part, and C. E. Nevitt, of the second part, and Henry Webber.

" Witnesseth, That whereas the said party of the first part is the owner of certain interests in the Emma mine, situate in Pitkin County, State of Colorado, and a suit is now pending in the District Court of said county on behalf of said Webber against said party of the first part and others for a one-third ($\frac{1}{3}$) interest in said mine; and whereas another suit is pending in said court in behalf of the said J. B. Wheeler and others against the said second party to recover possession of said mine; and the said second party in his defence thereto claims to hold a lease of said mine expiring on the 20th day of November, 1884, in which said suit the District Judge of said court has made an order allowing the possession of said property to remain in the hands of said second party during the period of said lease, two-thirds ($\frac{2}{3}$) of the proceeds thereof to be paid to John Hulbert, receiver, to be held by him to await the determination of said suit or the further order of the court, less a royalty of fifteen (15) per cent; and whereas said party of the second part has been for some time in the possession of said mine and has extracted a large quantity of ore, a greater portion of which is now on hand undisposed of; and whereas said second party, being desirous of compromising and settling said actions, it is agreed, in consideration of the premises, the said first party will, upon the ensealing of these presents, make, execute, and deliver a sufficient deed of quit-claim to said Webber, his grantees or assigns, for an undivided one-fourth ($\frac{1}{4}$) interest in said mine, and said Webber, on receipt of said deed, agrees to release, waive, and does hereby release and waive, unto said party of the first part all claims which he may have to any further or other interest in said property.

"And the suit aforesaid between the said parties to be dismissed upon each party paying their own costs therein. That the suit aforesaid between said first party and said second party shall likewise be dismissed upon the same terms, and the said second party hereby releases and waives to said first party all right and title as to said lease, save and except a one-third ($\frac{1}{3}$) interest therein, and at the end of said term to release and surrender the whole thereof and possession thereunder peaceably to said owners, their grantees or assigns.

"It is further agreed that the proceeds of the ore now on hand, after payment of the cost of production and after the payment of the costs of hauling and treatment, shall be divided as follows: The said party of the second part to receive one-third ($\frac{1}{3}$) thereof, less a royalty of fifteen per cent on said one-third interest, according to the terms set forth in his said lease, and the said party of the first part to receive three-fourths ($\frac{3}{4}$) of the remaining two-thirds ($\frac{2}{3}$), and the said Webber, his grantees or assigns, one-fourth ($\frac{1}{4}$) of the said remaining two-thirds ($\frac{2}{3}$), and during the remainder of the term of said lease, namely, up to and inclusive of the 20th day of November, A.D. 1884, the proceeds of the mine to be divided in the same manner and in the same proportions aforesaid, such division also to apply to and include the said royalty to be paid by the second party as aforesaid.

"And it is mutually agreed by and between the parties hereto that during the remainder of the term of said lease the said mine shall be under the superintendence of Joseph Ruse, who shall operate, work, and develop the said property for the mutual interest of all the parties hereto, and with a view to developing and preserving the said property as a workable mine as well as the production of ore therefrom, said work to be done by said Joseph Ruse in as economical a manner as possible, and to limit the production therefrom so as to correspond to the expense incident to mining, and the price for which said ore can be sold, and any failure upon the part of said Joseph Ruse to comply with the conditions herein mentioned shall be the cause for removal from such position of superintendent.

"The said Joseph Ruse during his continuance as superin-

tendent shall be under the advisory control of said first party. And the said second party and the said Webber shall have the right at all times to make suggestions in the matter of the authority of the said party of the first part respecting the management of the said mine.

"In witness whereof we hereto set our hands and seals on the day and year first herein above written.

"J. B. WHEELER.    [SEAL.]

"C. E. NEVITT.    [SEAL.]

"HENRY WEBBER.    [SEAL.]"

At the time this agreement was executed the defendant, the complaint alleges, "knew that said Nevitt was representing the said Webber, and that said lease was in fact owned by the said Webber, and that plaintiff was entitled to $\frac{5}{10}$ of the proceeds of said mine out of the $\frac{10}{60}$ thereof awarded to said Webber under and in virtue of said agreement; that in pursuance of said agreement the management and control of the working of said mine' was given over to the said defendant, who recovered the proceeds thereof and placed the same in his banking-house to the credit of the mine."

On the 21st of October, 1884, the defendant purchased said leasehold interest from Nevitt, who was acting for Webber as aforesaid, and took an assignment thereof to himself; that by virtue of said purchase he became entitled to $\frac{2}{6}\frac{0}{0}$ more of the ore then on hand, and $\frac{2}{6}\frac{0}{0}$ of that produced thereafter and until November 21, 1884.

On the 17th of November, 1884, Henry Webber sold his interest, $\frac{10}{60}$, to his wife, who, November 22, 1884, sold and conveyed to the defendant. Up to the ___ of Mrs. Webber's sale to the defendant a large sum of money was realized from the sale of the ore, and there was on hand, unsold, a large quantity taken from the mine subsequent to September 26, 1884, the money thus realized being in defendant's bank to the credit of the mine. The plaintiff claims that at the time the defendant purchased said leasehold interest there was due to him, on account of his $\frac{5}{10}$ out of the $\frac{10}{60}$ of the proceeds of the mine accorded to Webber and his grantees and assigns by the

agreement of September 26 a balance of $2262.30; that on the same basis there was due him $2630.66 at the time of defendant's purchase of Mrs. Webber's interest; which sums the defendant placed to his own account and converted to his own use.

The complaint further alleges:

"That at the time of the purchase of said leasehold interest and at the time of the purchase of said Julia Webber's title by the defendant the said defendant well knew that the plaintiff and the said Henry Webber had agreed at the time of the plaintiff obtaining his title aforesaid that plaintiff's interest was not subject to the burden of said lease, and that he, the said plaintiff, was to receive out of the interest of the said Webber, as the grantee of said Webber, his full one-twelfth share and interest in the ore produced and to be produced from said mine, and he well knew that by virtue of the terms of said agreement of the 26th day of September, 1884, plaintiff was entitled to his five-sixtieths of the proceeds of all ores extracted from said mine out of the ten-sixtieths aforesaid accorded to the said Webber by virtue of said agreement.

"That by virtue of the sale made by said Henry Webber to the said Julia Webber no part of the proceeds of said mine theretofore produced were sold to said Julia Webber, and that when said Julia Webber received said conveyance she also knew that plaintiff's five-sixtieths interest in the proceeds of the ore theretofore extracted from said mine was to come out of the ten-sixtieths thereof accorded to said Henry Webber under and by virtue of said agreement of the 26th of September, 1884, and that she also knew and understood that by virtue of said agreement made between the plaintiff and said Henry Webber at the time of his conveyance to said plaintiff that his, said plaintiff's, interest was not subject to the burden of said leasehold interest, and that said leasehold interest was owned and controlled by said Henry Webber."

Such is the case made by the complaint.

The defendant in his answer admits many of the allegations of the complaint, but denies that at the time of the making of the deed to him by Webber, or at any other time, it was

agreed between them that the plaintiff's interest would not be subject to the burden of the lease made by Abbey to Nevitt, or that he, defendant, knew, either at the time of the signing and execution of the agreement of September 26, 1884, or at any other time, that Nevitt was representing Webber, or that said lease was owned by Webber, or that the plaintiff was entitled to $\frac{5}{60}$ of the proceeds of the mine out of the $\frac{10}{60}$ awarded to Webber under said agreement.

He admits that up to the time of the sale to him by Julia Webber of the interest previously held by her husband, "there had been a large sum of money realized from the sale of ore taken from the said mine, together with a large amount unsold," and that "the moneys belonging to said interests were by him purchased with the said interests, and that he consequently realized the amount thereof." But he denies that any part or portion of the said proceeds of ores belonging to the plaintiff were ever withheld from him. He denies that at the time of his purchase from Julia Webber he ever knew, or that Henry Webber and plaintiff ever agreed at the time the latter got his title, "that plaintiff's interest was not subject to the burden of said lease, or that plaintiff was to receive out of the interest of said Webber, as the grantee of said Webber, his full $\frac{1}{12}$ share or interest of the ore produced or to be produced from said mine." He denies that "he well knew, or knew at all, either by virtue of the terms of said agreement of the 26th of September, 1884, or at any other time, that the plaintiff was entitled to $\frac{5}{60}$ or any other amount of the proceeds of ores extracted from said mine out of the $\frac{10}{60}$ accorded to said Webber by virtue of said agreement, or any other sum; but, on the contrary, alleges that the said plaintiff was to receive his proportion, to wit, $\frac{5}{60}$ of the proceeds of all the said ores, less the proportion which the $\frac{5}{60}$ interest should bear of the burden of the said lease upon the said $\frac{1}{8}$ interest in said mine." He denies that Julia Webber knew or understood that by virtue of the agreement of September 26, 1884, or of any agreement, the plaintiff's interest was not subject to the burden of the said leasehold interest, or that said interest was owned or controlled by said Henry Webber.

Verdict for defendant, and judgment on the verdict.   De-fendant sued out this writ of error.

*Mr. A. W. Rucker* in person for plaintiff in error.

*Mr. T. M. Patterson* and *Mr. C. S. Thomas* for defendant in error.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

1. We perceive no error in the court's charge to the jury upon the cause of action set out in the first count of the complaint, namely, as to whether any such agreement as that alleged was ever made between the plaintiff and the defendant.

The court properly said:

"On the cause of action as stated here, in order to show any right upon the part of the plaintiff to the commission for which he sues, in making the sale, the proof must be of a sale made to the defendant, or an agreement for a sale to be made to the defendant, not a sale to Judkins and Devereux, not a sale to Judkins and the defendant, because that is a very different matter from a sale to the defendant alone.  If Judkins was to be interested in the purchase he would also join in the payment of the commission — that is to say, Judkins and Devereux, if they purchase, Devereux acting on his own behalf, Judkins and the defendant, if they purchase jointly, would pay it.  If some other man was brought into the purchase — some one not named at that time or referred to in any way — then it would be that other man and Judkins who would pay the plaintiff the commission; furthermore, it does not appear — in fact the evidence tends to prove that Devereux had no authority from Wheeler at that time to make any purchase of this property or any other, and, of course, an agreement by Devereux on behalf of the defendant to purchase this property would not be binding on the defendant unless afterwards with full knowledge of the situation and circumstances, and of what had been done by Devereux in

his behalf, he should ratify and confirm what had been done by Devereux. I do not see that this evidence proves, taking all that is said about it by these witnesses, a contract on behalf of the defendant to purchase this property through the plaintiff. I say now generally upon this branch of the case that it must appear to you from the evidence, that there is an agreement between the plaintiff and defendant — Mr. Rucker and Mr. Wheeler — to the effect that Mr. Rucker was to secure the property for him and that he was to pay him for that service. The agreement, which appears to be stated by Judkins and by Devereux, is not of this character — that is, that was an agreement that Judkins would purchase with somebody else, and of course Judkins would be chargeable with the commission if it was carried out."

It is insisted by the plaintiff that the court went too far in its expressions of opinion upon the evidence bearing upon this issue, and that what was said had practically the effect of taking the case from the jury. It is no longer an open question that a judge of a court of the United States, in submitting a case to the jury, may, in his discretion, express his opinion upon the facts; and that "when no rule of law is incorrectly stated, and all matters of fact are ultimately submitted to the determination of the jury," such expressions of opinion are not reviewable on writ of error. *Vicksburg &c. Railroad* v. *Putnam*, 118 U. S. 545, 553; *St. Louis &c. Railway* v. *Vickers*, 122 U. S. 360; *U. S.* v. *Reading Railroad*, 123 U. S. 113, 114. Whether the parties made such an agreement for compensation to the plaintiff as that alleged was the only issue made by the first count of the complaint; and that was a question of fact to be determined by the jury. Their right to determine it was distinctly recognized in that part of the charge which immediately followed the court's expression of opinion as to certain portions of the evidence, namely: "If you can find anything in the evidence to support the conclusion that the defendant made an agreement with plaintiff to pay this commission, and that the property was afterwards purchased by him in pursuance of that agreement, then the plaintiff is entitled to recover; otherwise he is not entitled to recover."

Indeed, we are not sure but that the court might properly have given a peremptory instruction in favor of the defendant upon this branch of the case.

2. In reference to the cause of action set out in the second count of the complaint, it is manifest that the plaintiff bases his right to recover upon the agreement alleged to have been made between him and Henry Webber, at the time the latter executed the quit-claim deed of April 28, 1884, to the effect that plaintiff's interest would not be subject to the burden of the lease made by Abbey to Nevitt; of which agreement, it is further alleged, Julia Webber had knowledge when she purchased from her husband, and defendant had knowledge at the time he purchased from her.

Upon this part of the case the court said to the jury:

"Now, the position of the plaintiff is that he comes in under the designation of a grantee or assignee of Webber for one-half of the amount reserved to Webber by this agreement — that is $\frac{5}{60}$ths; this agreement reserves to Webber $\frac{10}{60}$ths; and the position of the plaintiff is that he must be regarded as an assignee and grantee of Webber in virtue of his deed of the preceding April for half of that amount which was reserved to Webber. He has brought this suit to recover that. Now, as I said before, in the deed there is nothing about that, and the question is, what was the intention of the parties at the time this deed was made? The plaintiff testifies that it was his intention that he should have the interest accruing under this lease as it went along, and was not to be postponed to the lease. I understand Mr. Webber to deny that proposition. Some comments have occurred between counsel as to the meaning of Mr. Webber's testimony, whether he has denied it or not. Mr. Webber could, if he chose to, by the terms of the agreement, reserve this entire interest to himself — that is, all that was accruing under the lease; if it was his intention to keep it to himself, and there was no agreement of the parties in respect to it, the deed constitutes no agreement. He could reserve it to himself, and if he did reserve it to himself, if nothing was said about it at that time, in the absence of any agreement between them that it should go to the plaintiff,

then it would go to Webber; and under these circumstances it remained in him up to the time that he made the sale to the defendant in this case. After the agreement of September 26th, and some time in October, Nevitt sold, as you remember, through the negotiations of Mr. Judkins, to Mr. Devereux or to the defendant directly — I don't remember much about that transaction — and subsequently Mrs. Webber, in a conveyance which she made to the defendant, assumed to convey all right and interest accruing to her under the lease. Upon that point the question is whether there was any agreement between the parties that the plaintiff's right and interest under this deed should become effectual at once upon the execution of the deed, and that he should be entitled to whatever should come under the lease to Webber — that is, to his part of it, $\frac{1}{12}$th, $\frac{5}{60}$ths, of the whole amount — and if Nevitt was taking the whole preceeds of the mine, and I believe he was — at least it seems that he did so or assumed the right to do so after the mine became fruitful, and that was only in August, I think, of the same year — there were no proceeds of the mine, nothing that could be divided amongst them — among the several parties — until that time, and nothing was in fact divided until after this agreement of the 26th of September was made. So that the question must be whether there was an agreement between the plaintiff and defendant, or between the plaintiff and Webber, that he should be entitled to these proceeds from the time of the conveyance to him; that is a question of fact for your consideration. If you find that there was such an agreement; that the parties understood and intended that Mr. Rucker should be entitled to whatever should arise under the lease according to the proportion and interest conveyed to him by this deed from and after the time of the deed until the end of the lease, then my understanding is that he is entitled to recover the sum specified in this stipulation between the parties. They have agreed upon the amount. In the absence of such an agreement, then, he is not entitled to recover." ·

There was no error in this charge. It contained all that need have been said. It fairly submitted to the jury the question as to the existence or non-existence of the agreement upon

which the plaintiff relied. That the plaintiff did rely upon that agreement is perfectly clear, not only from the complaint, but from his second request for instructions, as follows:

"2. The court is asked to instruct the jury that if they believe from the evidence that the lease of a portion of the lode, though made nominally to Nevitt, was in fact owned by Mr. Henry Webber, and that the same Webber sold and conveyed a one-twelfth interest to the plaintiff after the making and delivery of the lease, and if they also believe from the evidence that at the time of the execution of the deed from Webber to plaintiff it was mutually agreed between Webber and plaintiff that this one-twelfth should be exempt from the operation of said lease, then plaintiff is entitled to the proceeds of the one-twelfth, and upon these facts they should find for the plaintiff to the amount fixed by the stipulation of the parties read to the jury, and interest at the rate of ten per cent per year from August 24th, 1885, the date the suit was brought."

The jury having found, under appropriate instructions as to the legal rights of the parties, that there was no such agreement, and the parties having stipulated that nothing was due to the plaintiff if the interest he acquired from Henry Webber was subject to the burden of the Nevitt lease, the judgment is

*Affirmed.*