KERR v. MODERN WOODMEN OF AMERICA.

(Circuit Court of Appeals, Eighth Circuit. July 28, 1902.)

No. 1,629.

1. REMOVAL OF CAUSES—AMENDMENT OF PETITION.

A federal court may properly allow the amendment of a petition for removal which is sufficient to give it jurisdiction for the purpose of correcting a mistaken allegation as to plaintiff's citizenship, where plaintiff's own showing establishes the requisite diversity of citizenship to sustain the jurisdiction.

2. WITNESSES—COMPETENCY—INTEREST.

Under Rev. St. U. S. § 858, which forbids the exclusion of a witness because of interest in the issue tried, the fact that witnesses called in behalf of a fraternal insurance order are members of such order does not affect their competency.

3. LIFE INSURANCE—ACTION ON POLICY—EVIDENCE ON ISSUE OF SUICIDE.

Upon an issue as to whether an insured committed suicide, evidence of declarations made by him shortly prior to his death, and of other facts tending to show his mental condition and his expectations and apprehensions at the time, which might have influenced his act, is admissible.

4. EVIDENCE—PROOF OF CONTENTS OF WRITING—AUTHENTICATION OF COPY.

A newspaper clipping, purporting to be a copy of a note written in the memorandum book of an insured, found after his death, is sufficiently authenticated to render it admissible as secondary evidence to prove the contents of such note by the testimony of a witness that he made a copy of the note from the original, and subsequently compared the clipping with such copy, and found it correct.

5. LIFE INSURANCE—ACTION ON POLICY—MEASURE OF PROOF TO ESTABLISH SUICIDE.

A fair preponderance of the evidence only is required to establish the fact of suicide as a defense to an action on a life insurance policy.

6. TRIAL—INSTRUCTIONS—RIGHT OF JUDGE TO STATE OPINION AS TO FACT PROVED.

In a federal court the judge may properly state to the jury his own opinion as to what facts are proven or not proven by the evidence in the cause, and the bearing of such facts upon the issues submitted, if he also instructs them that they are not bound by his opinion on such matters, but that it is their duty as jurors to consider the evidence, and find the facts therefrom.

In Error to the Circuit Court of the United States for the Southern District of Iowa.

. This action was begun in the district court of Crawford county, Iowa, by the plaintiff, as beneficiary, to recover $3,000 upon a benefit certificate issued by the defendant to her husband, James R. Kerr, a member of the defendant fraternal order, by the terms of which certificate that amount was to be paid by defendant to plaintiff, as beneficiary, upon the death of her said husband while a member in good standing of said order. One of the conditions of said certificate was that it should become and be null and void in case the member should die "by his own hands, whether sane or insane." Said James R. Kerr died at his home in Manilla, Iowa, July 27, 1897, from a pistol shot, which passed through his head. The only defense pleaded was that said James R. Kerr had committed suicide, and died from wounds inflicted by his own hands. This was denied by plaintiff's reply, which averred that the death was caused by an accidental discharge of the pistol, without intent on the part of deceased to destroy his life. In proper time the defendant filed

¶ 5. Suicide as a defense to suit for life insurance, see notes to insurance Co. v. Florida, 16 C. C. A. 623; Casualty Co. v. Egbert, 28 C. C. A. 284.

its petition for removal of the cause into the United States circuit court for the Southern district of Iowa, setting forth that the defendant was a corporation and citizen of the state of Illinois, and that plaintiff was a resident and citizen of the state of Iowa, and that the matter in controversy exceeded $2,000, exclusive of interest and costs. It also filed a proper bond, which was approved, and the cause was then removed to said United States circuit court; whereupon the plaintiff filed a motion to remand said cause to the state court, on the alleged ground "that at the time of the commencement of the action she was not a citizen of Iowa, but a citizen of the dominion of Canada." She also then filed her plea in abatement to the jurisdiction of said United States circuit court, alleging therein that "at the date of the commencement of this action, and prior and subsequent thereto, she was a resident and citizen of the dominion of Canada, and a subject of the queen of Great Britain and Ireland." Thereupon the defendant, by leave of said United States circuit court, amended its petition for the removal of said cause from the state court by changing the statement therein that the plaintiff was and is a resident and citizen of the state of Iowa to a statement that the plaintiff was at and before the commencement of the action, and is, a citizen and resident of the dominion of Canada, and a subject of the queen of Great Britain. The plaintiff's motion to remand, as well as her plea in abatement, was then overruled. It appears that said James R. Kerr was married to the plaintiff in Canada in 1880; that they had a little daughter, named Georgia, and had resided at Manilla about 2½ years; that Kerr was a contractor and builder, and was a man of good reputation and standing in the community; was a member and regular attendant of the Presbyterian Church, a member of masonic orders, and a member, and the clerk, of the local camp at Manilla of the Modern Woodmen of America. On July 27, 1897, W. C. Irwin, county attorney of Sullivan county, Mo., and B. F. Lawson, a constable of Manilla, Iowa, arrested said James R. Kerr at a lumber yard in said Manilla upon a warrant and requisition for his arrest and removal to the state of Missouri for trial upon a charge of the crime of bigamy, alleged to have been committed by him in the state of Missouri, after his marriage to the plaintiff. Said Kerr went to his home near by, with Irwin and the constable, to prepare for his departure to Missouri. While there he made a check upon the local bank, upon which his wife, the plaintiff, then obtained $395.78; wrote his minutes as clerk of the local camp of Modern Woodmen; arranged papers, and did some other writing; took downstairs a trunk for his wife, who had been purposing a visit to Canada; and was left by plaintiff alone in an upstairs bedroom, arranging his clothing and his valise preparatory to going to Missouri. In a few minutes, upon hearing a shot, the plaintiff and Irwin hurried upstairs to the bedroom, and found Kerr dead upon the floor, just in front of a dresser with a mirror on its top, in a corner of the room. A revolver was lying upon or near his right hand. There was a shot wound where a bullet had entered his head in front of his right ear, and passed out near the parting of the hair on the left side of the top of his head. Some of the witnesses testified to a slight spattering of blood on the mirror and dresser, and to a piece of skin on a handle of a lower drawer. On the bed were his open valise, some clothing, memorandum books, and papers.

Exhibit E: The clipping from the Manilla Register of July 30, 1897, mentioned in the opinion, is as follows:

"Dearest Jessie: They are onto this for the money there is in it. The others are nothing to me. Collect my insurance. Take good care of Georgia. Good-bye.                                                                    Your Loving Husband."

I. N. Flickinger (A. T. Flickinger and Clark Varnum, on the brief), for plaintiff in error.

C. G. Saunders (David E. Stuart, J. G. Johnson, and J. W. White, on the brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

LOCHREN, District Judge, after stating the case as above, delivered the opinion of the court.

1. The petition for the removal of the cause from the state court set forth the diversity of citizenship of the parties, and was sufficient to give the circuit court jurisdiction. The statement that the plaintiff was a citizen of Iowa was made in apparent good faith, in view of her long residence therein. Her showing upon her motion to remand, and the allegations of her "plea in abatement to jurisdiction," made certain the existence of the diversity of citizenship, and the circuit court properly allowed the petition for removal to be amended as to the particular facts. Carson v. Dunham, 121 U. S. 421, 7 Sup. Ct. 1030, 30 L. Ed. 992; Powers v. Railroad Co., 169 U. S. 92, 18 Sup. Ct. 264, 42 L. Ed. 673; Johnson v. Manufacturing Co. (C. C.) 76 Fed. 616; Tremper v. Schwabacher (C. C.) 84 Fed. 413.

The testimony of the witnesses Irwin, Lawson, and Sterling as to declarations made to them severally by James R. Kerr was properly admitted. These witnesses, though members of the defendant fraternity, were competent, under section 858, Rev. St. U. S., which forbids the exclusion of any witness because of interest in the issue tried. The testimony was competent and material as tending to show the mental condition of Kerr, and what were his expectations and apprehensions, at and just preceding his death. And the testimony of Sterling as to Kerr's alleged Missouri family, and the relationship of the witness to them, was competent and material for the same reason, and to explain why the witness had the conversations with and made the demands of Kerr related in his testimony.

The clipping from the Manilla Register of July 30, 1897, was made competent. Irwin had seen Kerr writing in the memorandum book. Just after the death of Kerr he found the memorandum book on the bed, and copied from it the brief note of Kerr to his wife. He still had this copy, when, a few days later, he saw the copy of the note in the newspaper, and then knew that it was correct. The testimony showed that the original note in the memorandum book was read and examined at the inquest, and then delivered to the plaintiff. Her attorneys, before the trial, were served with proper notice to produce it, and did not do so. It was therefore competent to show its existence, and that it was in Kerr's handwriting, and its tenor by secondary evidence. The evidence that the note was in the memorandum book, and was in Kerr's handwriting, was abundant from persons who had seen it at the inquest and knew the handwriting. So many of these witnesses testified to its tenor from memory, without aid from the newspaper clipping, that it was abundantly proven; and the introduction of the clipping, if erroneous, was harmless. Even Mr. Jones—the only witness on the part of the plaintiff as to this note—gave its tenor substantially as did the other witnesses and as shown in the clipping. But the clipping itself was made competent by the testimony of Irwin. He saw it in the newspaper while the note, which was very brief, was fresh in his recollection, and while he had a copy of it which he had himself made, and was then certain that the clipping was a correct copy of the original. There was really no contention in the case, when on trial, as to the existence of this note in the hand-

writing of Kerr in the memorandum book, nor as to its tenor. The witness Jones stated that his knowledge of Kerr's handwriting was based on having Kerr's books and papers as administrator. But he did not attempt to state that he knew Kerr's handwriting as a matter of fact.

The hypothetical question put to Dr. Macrea as to the probable distance of the revolver from deceased's head was properly overruled. The doctor was allowed to state his knowledge, observation, theories, and views respecting the subject very fully. The question sought an answer based on conjecture.

The plaintiff's first request for instruction to the jury was properly refused. It was sufficient if the defendant satisfied the jury by a fair preponderance of the evidence that Kerr had committed suicide. The third request of the plaintiff was improper, because it contained a statement that it is usual in cases of suicide to hold the revolver against the head.

The assignments of error predicated upon the charge to the jury, as given, though very numerous, may be disposed of briefly. The second, fourth, and sixth paragraphs of the charge simply impressed upon the jury the doctrine that all persons and parties have equal rights before the law and in the courts, and that the jury should not act on sympathy or prejudice. The court very clearly directed the attention of the jury to the sole issue in the case. This was whether the death of Kerr was the result of accident, casualty, or mishap, or of suicide. The judge discussed the evidence, and in respect to some matters stated or intimated his own impressions or conclusions as to minor facts proven or not proven by the evidence. But he carefully and repeatedly told the jury that it was their province and duty to find the facts from the evidence, and that they were not bound by his conclusions or intimations in respect to matters of fact. That the judge may properly state to the jury his own opinions as to what facts are proven or not proven by the evidence in the cause on trial, if he also instructs them that they are not bound by his opinions on such matters, but that it is their duty as jurors to consider the evidence, and find the facts therefrom, has been the uniform holding of the federal courts. Transportation Line v. Hope, 95 U. S. 297, 302, 24 L. Ed. 477; Rucker v. Wheeler, 127 U. S. 85, 93, 8 Sup. Ct. 1142, 32 L. Ed. 102. "Trial by jury in the courts of the United States is a trial presided over by a judge, with authority not only to rule upon objections to evidence, and to instruct the jury upon the law, but also, when in his judgment, the due administration of justice requires it, to aid the jury by explaining and commenting upon the testimony, and even giving them his opinion upon questions of fact, provided only he submits those questions to their determination. Railroad Co. v. Putnam, 118 U. S. 545, 7 Sup. Ct. 1, 30 L. Ed. 257; Railroad Co. v. Vickers, 122 U. S. 360, 7 Sup. Ct. 1216, 30 L. Ed. 1161." U. S. v. Philadelphia & R. R. Co., 123 U. S. 113, 8 Sup. Ct. 77, 31 L. Ed. 138.

In determining the mental condition of Kerr at and just prior to his death, and whether it was such as would be likely to lead him to suicide, it was proper for the jury to consider the situation in which he was then placed, including his arrest for removal to another state,

the imminence of exposure, disgrace, and peril, and his acts, sayings, and writings at the time having a tendency to throw light on the subject, and also his character, standing, and connections in the community. And whether the impression of the judge that a man moving in the better class of society, with the standing of a gentleman and man of character, associating with respectable men and women in church and in society, would be more humiliated by such disclosures, and the possible consequences of such situation, and likelier to destroy his own life, than would a person without standing or character, whose associates were criminals and vicious persons, was correct or not, it was only stated to the jury as the judge's impression or conclusion, after carefully instructing them that they were not bound by his opinions or conclusions respecting such matters, but must themselves determine all matters of fact.

It was the duty of the court to see that the minds of the jury were not diverted from the real issue in the case by unfounded attacks by counsel upon the witnesses Sterling and Irwin; even such as are admitted on page 7 of the reply brief of plaintiff in error to have been made.

The remarks of the court in respect to conditions against suicide in policies of insurance, upon which the two next to the last of the assignments of error are based, could in no way have prejudiced the plaintiff. The certificate on which the action was brought contained a condition against suicide, and the validity of that condition in this certificate is not questioned.

What has been said covers all the assignments of error which need be considered. It may be added that, in view of all the circumstances surrounding the death of Kerr, and especially the two notes of like purport written to his wife just before his death, the verdict was fully justified, and the judgment is affirmed.