PITTSBURGH RY. CO. v. BLOOMER.

(Circuit Court of Appeals, Third Circuit. September 5, 1906.)

No. 28.

1. TRIAL—INSTRUCTIONS—EXPRESSION OF OPINION AS TO FACTS.

The charge of the court in an action against a street railroad company to recover for an injury to a passenger by being thrown to the ground by the sudden starting of the car when she was in the act of stepping off, construed, and held not to withdraw the question of defendant's negligence from the jury, but to leave its ultimate determination to them, merely expressing an opinion as to the effect of the evidence.

2. CARRIERS—ACTION FOR INJURY TO PASSENGER—EVIDENCE OF NEGLIGENCE.

Evidence considered and held to conclusively establish the negligence of a street railroad company in starting a car suddenly while a passenger was alighting therefrom.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Wm. A. Challener, for plaintiff in error.

E. E. Fulmer, for defendant in error.

Before DALLAS and GRAY, Circuit Judges, and LANNING, District Judge.

LANNING, District Judge. Two errors are assigned in the record of this case. Both of them relate to the court's charge to the jury. The first is "to the withdrawal from the jury of the question of the alleged negligence of the defendant [the plaintiff in error in this court], and in charging the jury that the defendant was guilty of negligence." The second simply quotes the language of the court in its charge on the subject of the defendant's negligence.

The counsel on both sides have argued the case on the theory that the trial court, in effect, charged the jury that as a matter of law the proofs showed the defendant to be guilty of negligence and that the jury were allowed only to assess the damages. But we think the language of the charge will not bear that construction. The language quoted in the second assigned error, which includes all that the learned judge said on the subject of negligence, is as follows:

"By common experience, getting off of a moving street car is a dangerous operation and results in a great many painful and serious accidents. The law unhesitatingly condemns it, and I should have no hesitation, if a case of that kind was presented to me, in saying that there could be no recovery. At the outstart of the case I had the idea that possibly that was the character of the case with which we had to deal, because Mrs. Bloomer herself testifies that after she had notified the conductor that she wanted to get off and had gone to the rear platform, she stood with one foot on the platform and one foot on the step below, and that when she was in that position the car started, and that she then stepped off. Also, in response to a question which was put to Mrs. Tyler, who was looking at Mrs. Bloomer as she was getting off, after thinking over the matter, Mrs. Tyler said practically the same thing, that she had one foot on the lower step and the other on the platform, and that the car started and then she stepped off. But we are relieved, both you and myself, of having to deal with such a case, for the motorman [it was the conductor and not the motorman] supplied a piece of evidence, for he with evident frankness testified that she was in the act of stepping off of the lower step when the car started. You see how frank the parties are on both sides here, Mrs. Bloomer testifying in a way that apparently was to her disadvantage, and the conductor also testifying in the way that I have just said, which really was favorable to the plaintiff, and evidently, taking it from the testimony and putting it together in this way, evidently she was so in the act of alightng that it may have seemed one way to one, and to another, another way, and if that was the case, if she actually was in the act of alighting, possibly with her foot almost in the air we may say, and then the car started, that would make out negligence and would relieve the plaintiff from any charge of carelessness on her part, which would stand in the way of her recovery. Looking at it in that way, it seems to me, is about the only way you can look at it. The company would be convicted of negligence, and the only question would be as to what the plaintiff was entitled to recover."

In Vicksburg, etc., Railroad Co. v. Putnam, 118 U. S. 546, 7 Sup. Ct. 1, 30 L. Ed. 257, Mr. Justice Gray, delivering the opinion of the court, said:

"In the courts of the United States, as in those of England, from which our practice was derived, the judge, in submitting a case to the jury, may, at his discretion, whenever he thinks it necessary to assist them in arriving at a just conclusion, comment upon the evidence, call their attention to parts of it which he thinks important, and express his opinion upon the facts; and the expression of such an opinion, when no rule of law is incorrectly stated and all matters of fact are ultimately submitted to the determination of the jury, cannot be reviewed on writ of error. Carver v. Jackson, 4 Pet. 1, 80, 7 L. Ed. 761; Magniac v. Thompson, 7 Pet. 348, 390, 8 L. Ed. 709; Mitchell v. Harmony, 13 How. 115, 131, 14 L. Ed. 75; Transportation Line v. Hope,

146 F.—46

95 U. S. 297, 302, 24 L. Ed. 477; Taylor on Evidence (8th Ed.) § 25. The powers of the courts of the United States in this respect are not controlled by the statutes of the state forbidding judges to express any opinion upon the facts. Nudd v. Burrows, 91 U. S. 426, 23 L. Ed. 286; Code Ga. § 3248. The exceptions to so much of the judge's charge as bore upon the liability of the defendant cannot therefore be sustained."

To the same effect see United States v. Reading Railroad, 123 U. S. 113, 8 Sup. Ct. 77, 31 L. Ed. 138; Rucker v. Wheeler, 127 U. S. 85, 8 Sup. Ct. 1142, 32 L. Ed. 102; Lovejoy v. United States, 128 U. S. 171, 9 Sup. Ct. 57, 32 L. Ed. 389; Doyle v. Union Pacific Railway Co., 147 U. S. 413, 13 Sup. Ct. 333, 37 L. Ed. 223.

All the learned judge in the present case did, in using the language complained of, was to tell the jury how the proofs in the case on the subject of the defendant's alleged negligence impressed him. He did not declare that there was such conclusive proof of negligence that the jury were relieved from the consideration of that subject. He simply said that if the car was started while the plaintiff was in the act of alighting from it there was negligence on the part of the defendant, and added that "looking at it in that way, it seems to me, is about the only way you can look at it." Then, after discussing the question of damages, the charge was closed with these words:

"Gentlemen, I think this practically covers all that seems to be necessary to say to you upon this subject, and I will therefore now submit the matter into your hands for you to exercise your best judgment and allow such a verdict as seems to you to be warranted and justified by the evidence."

It is clear that the case was ultimately submitted to the jury on all the evidence, both that relating to the question of negligence and that relating to the question of damages, and that the theory on which the case has been argued by counsel is therefore an erroneous one. Nor, if it be assumed that the jury were informed that there was conclusive proof of negligence on the part of the defendant company, do we think there was error. The evidence of negligence by the defendant is much stronger than one would infer from the language of the charge. It is very brief and may be quoted. The plaintiff on direct examination testified as follows:

"Q. What happened to you there in Wilkinsburg on that day? A. The car stopped, and I asked the conductor if they were going to turn around that corner and he said 'Yes'. I said 'I will get off here.' The lady with me and I started to get off. I was part of the way off the car when he started and it threw me head foremost to the ground, on the pavement, on my hands and knees. * * * Q. Was the car stopped when you started to get off? A. Yes, sir, when I raised from the seat in the center of the car. The conductor stood in front of me, and I started for the rear end of the car and got on the platform, with one foot on the platform and the other on the step, and, the car started and threw me forward. I landed on my hands and knees, so my hands were pressed all out of shape and my knees were injured. Q. You had one foot on the platform and one foot down on the step? A. Yes. Q. And while in that position the car started? A. Yes. Q. What injuries did you sustain at that time? A. A fracture of the knee cap."

On cross-examination she said:

"Q. Then I understand you, that as you were in the act of stepping down off the platform or off the step, the car moved forward? A. Yes, sir. Q. And you fell on the street beside the car, as I understand you? A. Yes, sir."

Mrs. A. L. Tyler, who saw the accident, on direct examination said:

"Q. Just describe to these men what you saw? A. Mrs. Bloomer [the plaintiff] and Mrs. Burke were on the car, and the car stopped and she attempted to get off. She had one foot on the platform and another on the step, and as she attempted to get off the car started, and, of course, threw her to the pavement."

In answer to questions of the court she said:

"Q. Do I understand that she was still with one foot on the step and one foot on the platform above when the car started? A. Yes. Q. She was standing on the step and about stepping to the ground when it started? A. I don't think so. Q. That is to say, after it started she made a step from the step of the car to the pavement? A. Yes."

On cross-examination she said:

"Q. I don't understand? A. I think Mrs. Bloomer had one foot on the platform and one on the step of the car. Q. When the car started? A. Yes. Q. And she was thrown from there? A. Yes."

For the defendant, James W. Weber, the conductor of the car, on direct examination said:

"The car had stopped at Penn avenue and Wood street. Every person got off the car but Mrs. Bloomer and this other lady that was with her. We were waiting on another car that came across the street. Mrs. Bloomer spoke to the other lady and asked me if the car turned up Penn avenue. I told her it did. Just then she got up to start out, she and the other lady, and I was standing on the platform when they were getting down off the step. She just had one foot on the ground and the other one on the step as the car started to move. I reached up and pulled the bell for the motorman to stop. He stopped right away, and the lady fell down on one knee, forward on one knee. She remained there. I and the lady behind her was getting off, and we stepped off and helped her over to a box on the street."

On cross-examination he said:

"Q. You say that the car was really stopped when she started to get off? A. Yes, sir. Q. And it really did start before she got off? A. She had one foot on the ground and the other one on the last step when the car started. Q. And it was the starting of the car which threw her forward? A. Well, yes, I suppose it was. Q. Had you signaled for the car to start? A. No, sir. Q. Then the motorman started without any signal, did he? A. Yes, sir."

Jacob Sank, the motorman of the car, testified on direct examination for the defendant as follows:

"Q. Where were they [the plaintiff and her companion] at the time? A. In the middle of the car. Another car just passing over, I thought I heard the bell go, my bell, to go ahead. The noise of the car and some wagons passing at the same time sometimes drowns the sound of the bell. This bell I had on that car was a little—didn't sound well, and sometimes I would stop and wait until I would get the second bell. That day I thought I got the bell, but I guess it was a mistake, and I started; but I didn't only move above two feet when I stopped again. The brake was on. Q. If I understand you, it amounts to about this, that there were bells sounded on the other car and you supposed it was your own car, and started your car forward. Is that right? A. Yes, sir."

This is subtantially all of the evidence which tends to explain the cause of the accident. It shows conclusively that there was a defective bell on the car, and that the motorman knew of this fact,

and sometimes waited for a second bell in order to make sure that he had a signal to go forward. On this occasion he started forward without any signal from the conductor, and whether the plaintiff had one foot on the platform and one on the lower step, or one foot on the lower step and one on the ground, is an immaterial fact,' for it is clear that whether she was in 'the one position or the other it was the unexpected forward movement of the car that threw her to the ground. The evidence therefore did conclusively show negligence on the part of the motorman of the defendant company. There was no conflict of evidence on this point, and the trial judge would have been justified in charging the jury, as a matter of law, that negligence by the defendant company had been shown. It is not suggested that the plaintiff was guilty of contributory negligence. That defense was not set up at the trial and, of course, is not before us.

The judgment of the Circuit Court is affirmed, with costs.