## MASON & HANGER CO. v. BURNAM et al.

Circuit Court of Appeals, Sixth Circuit.
December 16, 1929.

No. 5238.

Charles W. Milner, of Louisville, Ky. (William W. Crawford and Humphrey, Crawford & Middleton, all of Louisville, Ky., on the brief), for appellant.

J. S. Laurent, of Louisville, Ky. (Lewis L. Walker, of Lancaster, Ky., G. Murray Smith, of Richmond, Ky., and Gordon & Laurent, of Louisville, Ky., on the brief), for appellees.

Before MOORMAN and KNAPPEN, Circuit Judges, and SIMONS, District Judge.

KNAPPEN, Circuit Judge. Appeal from a judgment in a suit at law, on trial by jury, in favor of appellees, who were partners in the practice of law at Richmond, Ky., for legal services in connection with the trying out of issues of fact and of law raised by the income tax returns of appellant corporation, which was in the general contracting business, with offices in Richmond, Ky., and New York, doing railroad, tunnel, and highway work, including subway work for the city of New York, building part of the New York aqueduct system, lock and dam construction in the Ohio river, and apparently considerable work for the United States War Department. The preparation of the income tax returns for the years 1917, 1918, and 1919 was paid for each year on rendition of bill therefor, and no claim is made in this litigation for such service. In 1922 the return for 1917 was audited by the Department at an increase of about $59,000 above the amount conceded by the taxpayer's return for that year, and in 1923 the auditors assessed an additional tax of about $44,000 for 1918, with a deduction of $30,000 for the year 1919, thus making a net increase of about $73,000 in the assessments for the years 1917, 1918, and 1919. As the result of a re-examination, the assessment was reduced to about $44,000 for 1918, and an overassessment found for 1919 of about $30,000. A deficiency letter sent appellant September 11, 1924, failed to take into account about $25,000 which plaintiffs claimed had been conceded by the income tax unit on account of what are known as the Liberty bond and Lexington plant items, and defendants in error, on September 15, 1924, accordingly wrote the Deputy Commissioner of Internal Revenue calling attention to this oversight, and saying: "We feel sure that it was not the intention to *overlook these matters,* for which reason we will ask that a re-examination and re-audit be immediately made and that a new deficiency letter be issued *after these changes have been applied.*" [1] On October 18, 1924, the Deputy Commissioner of Internal Revenue wrote appellant another deficiency letter, increasing the net deficit for 1917, 1918, and 1919 to about $565,000; and on May 25, 1925, the assessment was again increased by about $60,000, thus making the net deficiency assessment about $625,000. As a result of numerous conferences, briefs, and hearings, on October 15, 1925, appellant's net tax liability was reduced to about $108,000. The assessment was finally reduced to about $59,000, or a total reduction of about $565,000 and was finally assessed on that basis and was paid.[2]

Plaintiffs (appellees) sued upon a quantum meruit for the reasonable value of their services, which they asserted to be $50,000, less the sum of about $1,000 previously paid on account. Plaintiff had verdict and judgment for $30,000.

 Defendant's principal defense upon the merits was that plaintiffs' letter of September 15, 1924, which protested the assessment of September 11, 1924 (because it included the Liberty bond and the Lexington plant items which the tax unit had disallowed), *in terms called for a reopening of the entire case,* and for a re-examination or reaudit *of the tax accounts generally;* that this alleged blunder on plaintiffs' part resulted in the reassessment of $625,000, and that the greater part of plaintiffs' services for which recovery was sought in the instant case were expended in attempting to get rid of the surplus of the $625,000 above the previous assessment of $73,000, and were thus due to plaintiffs' alleged carelessness and neglect, and outside the scope of their employment. Appellant accordingly asked that the jury be instructed that, if they believed that plaintiffs' letter of September 15, 1924, caused the reopening and reassessment of defendant's income tax returns for 1917, 1918, and 1919, they should award plaintiffs no compensation for services in connection with getting rid of the additional assessments thereafter made. This request being refused, an instruction was asked that the plaintiffs "could be awarded no compensation for services rendered in connection with items which he lost, or for saving appellant in regard thereto for the purpose of any future possible claim for refund or suit, because the plaintiff had not sought to recover on account of such matters"; and on refusal of this request a further instruction was asked that plaintiffs were not entitled to anything for services rendered by them that were not necessary or of value to the defendant in defense of the claims made against it. This request was refused.

In submitting to the jury's determination what the fair and reasonable compensation to plaintiffs would be for the services rendered,

---

[1] All italics in this opinion ours unless otherwise noted.

[2] The $59,000 tax was made up of deficiency amounts for 1911 to 1915 aggregating about $4,000, for 1917 about $41,000, for 1918 nearly $45,000, less an overassessment for 1919 of about $30,000.

the court instructed that plaintiffs' letter of September 15, 1924, did not call for or justify a reopening of the case, but could properly be considered only as asking that a new deficiency letter be made after giving credit on account of the Liberty bonds and the Lexington plant items; the court adding, however, that, while there was no room to claim that the letter in question justified such reopening, yet, if "actually and really that letter did cause a re-opening of the case, then you should take that into consideration, as bearing in [on] the charge for the services, which in that case, as I have said, should be more moderate."

We entirely agree with the trial judge's interpretation of plaintiffs' letter of September 15, 1924, and that it did not call for or justify the reopening of the case. In addition to the language already quoted from the body of the letter, attention is called to the fact that immediately following the reference to what is termed "a very evident oversight in the preparation of your deficiency letter of September 11, 1924," there follows the specific statement: "Your mistake or oversight lies in the fact that certain agreements arrived at in conference between the taxpayer's representatives and conferees of the unit before the case went before the committee on appeals and review has not been taken into consideration." After reference to the unit's memorandum to the Commissioner, and after stating that reference to the appeal brief shows that the taxpayer's contentions regarding the Lexington plant item and the Liberty bond item were "agreed to by the conference with the unit, but have been overlooked in the preparation of the present deficiency letter" there follows the statement already quoted herein.[3] The letter then concludes: "Particularly with reference to the deduction from 1919 income of the bond loss, the taxpayer will have no relief unless the matter is settled before it leaves the unit, as there is an overassessment shown for 1919, and there is no appeal as we understand it to the Board of Tax Appeals from any action relating to an overassessment. It is equally clear that the mistake could be corrected as to the Liberty bond item because its establishment was a matter of considerable detail gone into thoroughly by the unit conferees and established to their entire satisfaction. In view of the

[3] "We feel sure that it was not the intention to overlook these matters, for which reason we will ask that a re-examination and re-audit be immediately made and that a new deficiency letter be issued after these changes have been applied."

peculiar situation an immediate answer will be very highly appreciated."

This construction of plaintiffs' letter of September 15, 1924, is convincingly confirmed by the repudiation by the then Assistant Revenue Commissioner (who was the head of the income tax unit) of the construction by the special auditor (in charge of the audit in question) of the protest letter in question, and the Assistant Commissioner's testimony as a witness below that the letter itself was only sufficient to reopen the case in so far as it asked for a reconsideration of the matters therein requested, and that there was no ruling in force in the Income Tax Department which would construe that letter "as a request to entirely re-open and re-audit the entire case." There is no testimony to the contrary. The special auditor in effect contents himself with saying that the case was reopened "at the request of the taxpayers"; "I took the case and re-audited and re-examined it and made a ruling, which was expressly contrary to what had been decided by the unit and affirmed by the Committee on Appeals and Review, because of the taxpayer's request to re-open it." I "would not have opened the case or attempted to; I could not have opened it or attempted to if I hadn't that letter."

It thus comes to a question of common sense construction unincumbered by any statutory or departmental rule. There is therefore no reason why the trial court or this court should not interpret the letter according to the meaning thereof obvious on its face. It follows that there was no error in the court's instructions to the jury regarding the interpretation and effect of the letter in question. Nor, in view of the charge generally, was any error committed in refusing defendant's other specific requests, or in the charge of the court on its own motion.

As plaintiffs are not appealing, we have no occasion to consider whether the trial court properly held that the effect of plaintiffs' letter in question, as bringing about a reopening of the case, could be taken into account in determining what a reasonable fee should be.

█ The only remaining assignment of error urged here is addressed to a contention that the trial court took out of the hands of plaintiffs' lawyers the interrogation of their expert witnesses as to the value of services rendered, and that this amounted to a presentation of plaintiffs' case by the court instead of by counsel upon a vital question.

We see no merit in this contention. The court's participation complained of was in

the formulating of a hypothetical question to expert witnesses for the plaintiffs as to the value of the latter's services, which depended largely upon a variety of circumstances and conditions upon which the parties were not agreed, such, for example, as to the extent to which plaintiffs—as distinguished from other counsel employed by defendant upon certain features of the case—had brought about the final favorable result. Plaintiffs had the right to include in their hypothetical question all facts which there was substantial testimony tending to prove. The ultimate question to be answered was based upon "assuming all of these facts." To save reading the hypothetical question to each witness separately, plaintiffs' counsel proceeded, without objection from opposing counsel or the court, to read his hypothetical question to all expert witnesses at once. After several interruptions, by way of objections to certain features of the question, for one cause or another, upon which the court had to pass, the judge said: "I don't know whether I can do it or not, but I am just disposed to try to state the question," which he proceeded to do, without objection from counsel on either side. On reaching a certain point, the court expressed its inability to "state just how that work was done by Mr. Greenleaf," and asked plaintiffs' attorney to cover that feature. After that was done, the court continued the statement of the hypothetical question, frequently interrupted by suggestions by plaintiffs' counsel and by objections by defendant's counsel as to certain features, and by occasional colloquies between court and counsel. In the course of cross-examination of the first of plaintiffs' witnesses as to value, defendant's counsel propounded hypothetical inquiries based upon the evidence he proposed to put in—which again was punctuated by more or less suggestions, objections, and colloquies—at the end of which the court asked, "Is there anything further that hasn't been recited—isn't that a correct statement of how it happened?" No answer appears to have been given to that question. During the cross-examination of some of plaintiffs' other witnesses as to value of services hypothetical inquiries were made.

When the second expert witness had been sworn, the court made an addition to the hypothetical question regarding one feature of the testimony. Throughout the forming of the question, from first to last, no objection whatever was made by defendant's counsel to the court's participation, nor was any suggestion made of impropriety therein or prejudice thereby to defendant.

We are unable to see that plaintiffs' case was unduly stressed by the court, nor that defendant suffered any prejudice by the course taken;[4] and we are not impressed by defendant's contention that "the jury would feel that the judge was greatly impressed with the appellees' case and the value of the legal services performed, and would render a verdict accordingly, influenced more by the presentation of the plaintiffs' case by the court than by the evidence as it stood."

Defendant's counsel presented no expert witnesses as to value, and thus no hypothetical question to their own witnesses. Had that been done, presumably the court would have taken as active interest in the statement of defendant's case. Defendant's brief states that the court, while participating in the framing of the hypothetical question, "stood before the jury" and (by implication) in the place usually occupied by counsel while addressing them. The record contains nothing substantiating that statement. In these circumstances, and in the absence of further particulars and of objection at the time, and of knowledge of the court's practice in such cases, we cannot say that any prejudicial error was committed. As regards the final *substance* of the hypothetical question, and wholly apart from the court's participation in formulating the same, and without considering whether the objections as stated on the trial sufficiently indicated by their environment (in the absence of specific statement) the grounds on which they were based (Robinson v. Van Hooser [C. C. A. 6] 196 F. 620, 624, 625), we content ourselves with saying that we find no merit in the objections.

The value of plaintiffs' services was estimated by their nine witnesses at amounts ranging from $50,000 to $60,000. There was thus competent and substantial evidence tending to sustain the verdict as to value. We could not, even if we would, weigh the evidence and substitute our judgment for that of the jury. Burton v. United States, 202 U. S. 344, 373, 26 S. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 362; Kelly v. United States (C. C. A. 6) 258 F. 392, 406.

Nor need we, in that connection, consider the comparative value of the services of other counsel with respect to one or more features of the case, nor the question of constructive cash receipts and disbursements, neither of which matters is involved in the ultimate issue before us on this appeal.

The judgment of the District Court is affirmed.

4 See, by analogy, Rucker v. Wheeler, 127 U. S. 85, 93, 8 S. Ct. 1142, 32 L. Ed. 102, and Tuckerman v. United States (C. C. A. 6) 291 F. 958, 964, and 965.