## CALCUTT et al. v. GERIG.

(Circuit Court of Appeals, Sixth Circuit. February 18, 1921.)

No. 3451.

**1. Conspiracy ⊙⟹19—May be inferred from concerted actions.**

In a civil action for conspiracy, plaintiff need not prove preliminary meeting of the plaintiffs, or a definite plan or agreement by them to injure his person or property; but it is sufficient if the proof shows a concert of action in the commission of the unlawful acts, from which the natural inference arises that they were in furtherance of a common design of the alleged conspirators.

**2. Conspiracy ⊙⟹19—Evidence held to sustain finding of conspiracy to interrupt plaintiff's show.**

Evidence of acts by defendants in preventing the exhibition of plaintiff's show, which included assault on plaintiff and his employes and destruction of his property, *held* sufficient to warrant the jury in inferring a conspiracy by the defendants to commit the unlawful acts.

**3. Conspiracy ⊙⟹13—Parties subsequently participating in unlawful acts are co-conspirators.**

All who participated in unlawful acts committed in furtherance of a conspiracy are equally liable as co-conspirators, regardless of whether they were original parties to the conspiracy or not.

**4. Conspiracy ⊙⟹13—Conspirators liable for destruction of property by mob in their absence.**

Conspirators, who had incited a mob to destroy plaintiff's property in order to prevent the exhibition of his show, are liable for the acts of destruction done by the mob after the conspirators had left the scene.

**5. Evidence ⊙⟹253 (2)—Declarations of conspirator before object was fully accomplished are admissible.**

Where the purpose of the conspiracy was to prevent plaintiff from giving his show and to compel him to leave the town, the acts and statements of one of the conspirators, after he had agreed to abandon the show, but before he had left town, were admissible against all.

**6. Conspiracy ⊙⟹19—Evidence of reason for conspiracy to prevent show held incompetent.**

In a civil action for conspiracy to prevent plaintiff from exhibiting his show in a certain town by mob violence, evidence of the labor situation and the necessity that the farmers should harvest their crops as the reason for the opposition to the show was incompetent on behalf of defendant.

**7. Trial ⊙⟹193 (1)—Federal judge can express opinion on evidence.**

The trial judge can express an opinion as to the facts and comment upon the evidence, if he is careful to advise the jury that it, and not the court, is the trier of the facts, so as to leave the jury free to exercise its own judgment as to the facts.

**8. Trial ⊙⟹240, 244 (2)—Argumentative charge, unduly emphasizing evidence, held not invasion of jury's province.**

The objection that the charge was argumentative, and unduly emphasized the evidence of plaintiff, so that the court's opinion would necessarily be inferred from the language, does not require reversal, where the court stated that his charge was only for the purpose of suggesting the method of consideration, and that if he should omit any evidence, or not correctly repeat it, the jury should understand he was mistaken, and should act upon their own recollection.

---

⊙⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Western District of Tennessee, at Memphis; John E. McCall, Judge.

Action by T. H. Gerig against N. W. Calcutt and others. Judgment for plaintiff, and defendants bring error. Affirmed.

C. L. Sivley, of Memphis, Tenn. (Sivley, Evans & McCadden, of Memphis, Tenn., and Draper & Rice, of Dyersburg, Tenn., on the brief), for plaintiffs in error.

J. F. Bickers and Harry Spears, both of Memphis, Tenn., for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. On March 13, 1919, T. H. Gerig filed his amended declaration in the District Court for the Western District of Tennessee, averring among other things that, at and prior to the time of the commission of the grievances complained of, he was and had been the operator and manager of a minstrel show known as the "Old Kentucky Minstrels"; that this show was billed in advance to give a performance in the city of Dyersburg, Tenn., on the night of June 21, 1918; that the plaintiffs in error, with others, on or about said date, entered into a wicked, willful, malicious, and unlawful conspiracy to oppress, threaten, intimidate, and injure or kill plaintiff, break up his show, ruin his business, destroy his property, and scatter or drive his employés out of town; that in pursuance of this conspiracy they notified him that he would not be permitted to show in Dyersburg, and that he must remove his show out of town; that while plaintiff, his wife and ticket seller were selling tickets for the evening performance, these plaintiffs in error assaulted him and his ticket seller, scattered plaintiff's money and tickets, caused his employés to scatter through fear of death or injury; dragged, carried, and pushed plaintiff and his ticket seller several blocks; cursed, abused, and threatened to hang them and to destroy plaintiff's show; that they caused a mob to form for the purpose of assisting them, and became the self-constituted leaders of said mob; that thereafter they took plaintiff to the mayor's office, where they again threatened him with bodily injury and the destruction of his property, and compelled him to take back the amount of money which he had paid for state, county, and city licenses for the privilege of giving the performance; that thereafter said defendants did mistreat plaintiff and his wife and compelled him to distribute money among numerous people who were collected in and about his show tent and compelled him to tear down his tent and move out of Dyersburg; that by reason of this unlawful, willful, and malicious conspiracy, and the words, acts, and conduct in furtherance thereof as above stated, the plaintiff was deprived of exercising his rights and privileges as a citizen of the United States; that he was prevented from giving a performance in the city of Dyersburg, was caused much loss of time and money, and was forced to distribute a considerable amount of money among various people and was compelled to take down his tent and move his show out of town; that he was greatly

injured on and about his head, neck, arms, body, and legs; that he was greatly shamed, humiliated, mortified, and outraged; that he was caused great mental and physical pain and anguish; that he was placed in great fear of death, or bodily injury; that his nervous system was seriously and permanently injured and impaired, and his capacity for work, labor, and carrying on his business and the enjoyment of life was greatly damaged and impaired, for all of which injuries he asks a recovery in the sum of $50,000, actual and punitive.

To this declaration the defendants pleaded not guilty. Trial was had upon the issue so joined, and the jury returned a verdict in favor of Gerig and against the plaintiffs in error, N. W. Calcutt, J. A. Green, O. P. Bishop, C. S. Hall, and John Hurt, for actual and punitive damages aggregating $5,000. Judgment was rendered for the full amount of the verdict.

At the close of the plaintiff's evidence, defendants made a motion for a directed verdict, which motion was sustained as to the defendant Walter Harrell, and overruled as to the other defendants. This motion was renewed at the close of all the evidence by the defendants Calcutt, Bishop, Hurt, Hall, and Green, which motion was based on the claim that the evidence did not show any conspiracy on the part of the defendants, nor any circumstances that would indicate a conspiracy had been formed, and that the evidence was not such as to hold any of the defendants for a personal liability, unless the charge of conspiracy had been established, which motion was overruled by the court and exceptions noted.

It is insisted on behalf of the plaintiff in error that the overruling of this motion was prejudicial error; that the plaintiff had predicated his cause of action upon the charge of conspiracy; that there was no evidence tending to establish such conspiracy, and therefore no recovery could be had as against either of them individually or all of them collectively.

[1] While perhaps there is no proof in this record of any preliminary meeting of these plaintiffs in error, or of a definite plan or agreement entered into by them to injure plaintiff in his person or property or deprive him of his lawful rights as an American citizen, yet such proof is not essential to the establishing of a conspiracy, and indeed would be wholly impossible in the great majority of cases of this character for the evident reason that conspirators do not, as a rule, invite the public into their confidence or advise the contemplated victim or victims in reference to such preliminary matters. Alaska S. S. Co. v. International Longshoremen's Ass'n (D. C.) 236 Fed. 964. It is sufficient if the proof shows such a concert of action in the commission of the unlawful act or such other facts and circumstances from which the natural inference arises that the unlawful overt act was in furtherance of a common design, intention, and purpose of the alleged conspirators to commit the same. Farmer v. U. S., 223 Fed. 903–907, 139 C. C. A. 341.

[2, 3] Evidence was offered on the part of the plaintiff tending to establish each and all the material averments in his amended declaration. The evidence offered on the part of the defendants was in direct

conflict therewith. The credibility of the evidence was therefore a question for the jury. If the jury believed the evidence offered on the part of the plaintiff, it could arrive at no rational conclusion, other than that the conduct of plaintiffs in error was in furtherance of a definite plan and conspiracy to injure plaintiff in his person and property and deprive him of his rights as an American citizen to conduct this legitimate business in the city of Dyersburg without hindrance or molestation. It also follows that all those who participated in this unlawful violence inflicted on the plaintiff are equally liable as co-conspirators, regardless of whether they were originally parties thereto or not. Steamship Co. v. Longshoremen, supra. It is therefore apparent that it was not error for the court to overrule the motion for a directed verdict.

[4] It is further insisted, however, that it was error to permit evidence to be introduced in reference to the destruction of property at the tent while these defendants were at the mayor's office. It would seem almost unnecessary to say that persons responsible for mob violence cannot escape liability for the necessary and natural consequences thereof. It would be just as reasonable to say that a man might start a fire, and then by retiring to some distant spot avoid responsibility for the destruction wrought by the conflagration he initiated.

[5] It is also insisted that it was error to permit evidence in reference to the acts and statements of Calcutt after the plaintiff had agreed at the mayor's office to abandon the show if his license fees were returned to him. The purpose of this conspiracy, if any existed, was to prevent the plaintiff from giving this show and compel him to leave Dyersburg. Any action or statement on the part of any one or more of the conspiracy until that object and purpose had been fully accomplished is competent evidence against all.

[6] It is further insisted upon the part of the plaintiff in error that the court erred in refusing to permit the witnesses Green and Calcutt to explain to the jury the labor conditions in and around Dyersburg which caused the farmers to object to Gerig's show on the grounds that it disturbed the harvesting of the crop. Such a defense cannot be permitted. It could in no way justify or excuse acts of violence of the kind and character charged in the amended declaration, and which the evidence offered by plaintiff tended to establish. If this plaintiff was violating any legal rights of the farmers, or of any other class of citizens, they had a remedy at law or in equity; but the law does not tolerate mob violence, no matter how offensive the show might have been to some or all of the citizens of Dyersburg.

[7] It is further insisted that the court erred in its charge to the jury, in that every incident and circumstance testified to by the plaintiff was enlarged upon and magnified in the charge, and that every detail, however trifling, that tended to discredit the defense, was presented to the jury in the most favorable light to the plaintiff; that the charge of the court was argumentative, and placed the defendant at a disadvantage; and that it did not leave the jury free to exercise its own judgment as to facts.

The right of the trial court to express an opinion as to the facts and comment upon the evidence under the federal rule, is very fully stated in the case of Vicksburg Ry. Co. v. Putnam, 118 U. S. 545, 553, 7 Sup. Ct. 1, 30 L. Ed. 257, in this language:

"In the courts of the United States, as in those of England, from which our practice was derived, the judge, in submitting a case to a jury, may, at his discretion, whenever he thinks it necessary to assist them in arriving at a just conclusion, comment upon the evidence, call their attention to parts of it which he thinks important, and express his opinion upon the facts; and the expression of such opinion, when no rule of law is incorrectly stated, and all matters of fact are ultimately submitted to the determination of the jury, cannot be reviewed on writ of error."

This statement as to the federal rule has been followed and approved by the Supreme Court in later cases, and this court has consistently applied this interpretation of the rule in all cases where this question was involved. The court, in this case, was careful to advise the jury several times in the charge that it, and not the court, was the trier of the facts. In one place in this charge this language is used: "So you take the whole case, and determine for yourselves upon all this evidence." And again: "You are the exclusive judges of the credibility of witnesses and the weight of the evidence." And again: "Then it comes to you upon the question of fact, and you must determine the rights of these parties upon the evidence." And again: "There is no evidence as I recall, but you will remember how that is." It would therefore appear from this charge that the court did leave the jury free to exercise its own judgment as to the facts. McLanahan v. Universal Ins. Co., 26 U. S. (1 Pet.) 170, 7 L. Ed. 98.

[8] As to the objection that the charge was argumentative, and unduly emphasized the evidence of plaintiff, and that whatever tended to discredit the defense was presented to the jury in the most favorable light to the plaintiff, it would appear upon a careful reading of this charge that it comes fairly within the doctrine announced in the case of Railway Co. v. Putnam, supra. The court, however, in this connection instructed the jury in the following language:

"Only for the purpose of suggesting to you the method of consideration, I shall call your attention to the facts in evidence, and if I should omit any you will remember them and act upon them, or if I should not correctly repeat the evidence then you will understand that I am mistaken about it, and act upon your own recollection."

In the case of Young v. Corrigan, 210 Fed. 442, 127 C. C. A. 174, this court held that:

"It was not error for the trial court in the charge to express an opinion relative to plaintiff's failure to produce a certain witness, where the jury was given to understand that it was not bound by such opinion. The jury was sufficiently advised in this regard. The comments criticized did not trench upon the province of the jury, or go beyond the limits of reasonable expression of opinion."

See Simmons v. United States, 142 U. S. 148–155, 12 Sup. Ct. 171, 35 L. Ed. 968; Doyle v. Railway Co., 147 U. S. 413–430, 13 Sup. Ct. 333, 37 L. Ed. 223; Allis v. U. S., 155 U. S. 117–123, 15 Sup. Ct. 36, 39 L. Ed. 91.

In the case of Shea v. U. S., 251 Fed. 440, 163 C. C. A. 458, the trial court, among other things, charged the jury as follows:

"There is little chance for dispute here, in the court's opinion, but that the paraphernalia employed to impress Hoblitzel with the thought that he was in touch with the real turf exchange, so called, where real wagers on the outcome of real horse races might be laid, were but the furniture of this swindle. The large amount of apparent money was but a simulation, the telegraph and telephone instruments were but shams, in that neither was a real instrument of communication; the announcements and posting of races were shams; the bookings were tricks. Any one who devised this scheme produced just such a fraudulent device as the statute condemns."

It was insisted that this charge was erroneous, for the reasons, first, that it instructed the jury that this so-called "turf exchange" was a sham and a fraud; and, second, that the charge as a whole was unduly argumentative in favor of the prosecution. This court, however, held that there was no other reasonable inference to be drawn from the evidence in that case, and that:

"While the charge of the court was argumentative, in the sense that it contained a considerable discussion of the testimony, which was applied to the various elements of the offense charged, we are not impressed that it was unduly so, or that it went beyond the limitations upon the trial judge's right of comment as previously expressed in this paragraph."

The charge of the trial court in the case under consideration, upon the whole, was no more argumentative nor positive in the expression of opinion than was the charge in the case of Shea v. U. S., supra. In fact, this charge does not in terms express any opinion of the trial court, but, on the other hand, it might reasonably be urged that such opinion would necessarily be inferred from the language used by the court. However, the court did not comment upon any fact or circumstance or the absence of any evidence within the power of the defendants to produce, that was not proper to be considered by this jury, in determining the question submitted to it, and was very careful to tell the jury that these comments were merely for the purpose of suggesting a "method of consideration," and that if the court did not correctly repeat the evidence, then the jury should understand that the court was mistaken about it, and that the jury must act upon its own recollection. It would, therefore, seem that this objection to the charge is fully answered by the cases of Young v. Corrigan and Shea v. U. S., supra.

Upon the question of conspiracy, the court specifically charged that the plaintiff was bound to prove a conspiracy before he would be entitled to recover.

For the reasons above stated, the judgment of the District Court is affirmed.