## TUCKERMAN v. UNITED STATES.  WILKES v. SAME.  BERRYMAN v. SAME.

(Circuit Court of Appeals, Sixth Circuit.  June 29, 1923.)

Nos. 3791, 3810, and 3826.

1. **Criminal law ⊚⟶369(2), 376—Testimony defendant had been engaged in liquor business held not erroneous.**

In a prosecution for giving a bribe to a deputy United States marshal to secure immunity from prosecution on account of the violation of Reed Amendment March 3, 1917, § 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a), testimony by the marshal on behalf of the government, that he never knew defendant to be engaged in any business other than handling whisky, was not erroneous as an assault upon the reputation and character of defendant, or as tending to show guilt of another offense, where the time referred to was before the National Prohibition Act took effect on January 16, 1920, and there was no evidence that the sale of whisky was then illegal where defendant resided.

2. **Bribery ⊚⟶10—Testimony as to date of first transaction held competent.**

Where an indictment for giving a bribe stated the offense, under a videlicet, as occurring in April, 1919, testimony by a witness for the government, to whom the bribe was given, that he thought his connection with defendant really began in the fall of 1918 was competent in connection with other evidence showing that somewhere about the middle of April a specific proposition of payment was made.

3. **Witnesses ⊚⟶374(1)—Question whether witness had indicted every man on list held incompetent.**

A question, asked the principal witness for the government on cross-examination, as to whether he had not indicted every man he had any transactions with, was properly excluded as incompetent, since the witness had no authority to indict any one, and especially where defendant was permitted, without objection, to ask whether the witness did not check off from the list the people he had made statements about.

4. **Criminal law ⊚⟶1043(2)—Admission of evidence of defendant's arrest for vagrancy not reversible in absence of ground of objection.**

Permitting defendant to be cross-examined as to arrests for vagrancy was not reversible error, where no ground of objection to the question was stated, since the testimony was not so clearly improper or prejudicial as to justify waiving the rule requiring the grounds to be stated.

5. **Criminal law ⊚⟶1173(2)—Failure to caution against testimony of accomplices is not reversible error.**

While it is the better practice in penal cases for courts to caution jurors against too much reliance upon the testimony of accomplices and against believing such testimony without corroboration, the mere failure to give such an instruction is not reversible error.

6. **Criminal law ⊚⟶829(16)—Refusal of instruction as to particular evidence of motive of witness held not error.**

Where the court had already instructed the jury to consider the motive, if any, which actuated the witnesses in testifying, it was not error to refuse a requested charge that the evidence showed the prosecuting witness was jealous of defendant, and that the jury should consider that evidence as to whether or not there was a motive actuating the testimony.

7. **Criminal law ⊚⟶762(2)—Trial judge may express opinion on facts.**

In the courts of the United States, a trial judge may express his opinion to the jury upon the facts, subject to the qualifications that the ultimate decision upon the facts be left to the jury, and that his comments be judicial and dispassionate, and so carefully guarded that the

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

jurors, who are the triers of the fact, may be left free to exercise their independent judgment.

8. **Criminal law ⬅762(5)—Expression of trial judge's opinion held not erroneous.**

A statement in the charge that the jurors were not to be influenced by anything the judge might say, or which they might believe he thought about the case, but that he was unable to find any motive for the government witnesses testifying as they did, if it was not the truth, did not amount to a direction to the jury to bring in a verdict of guilty, and was judicial and dispassionate and not erroneous.

9. **Criminal law ⬅863(1)—Judge can express opinion on fact after reported failure to agree.**

Where the case had once been submitted to the jury and they had reported to the court their failure to agree, it was not error for the court then to express his opinion on the facts with a proper explanation the jury was not to be bound thereby.

10. **Criminal law ⬅814(1)—Trial court's statement conflict in testimony was immaterial held not error.**

Where there was a difference in the testimony of the government's witnesses as to the number of cases of liquor defendant's boat brought in, a statement by the judge in his charge, that that was not a material conflict, was correct where defendant contended his boat could not carry either of the amounts testified to by the government's witnesses.

11. **Criminal law ⬅742(1)—Credibility of all witnesses, including accomplices, is for the jury.**

The credibility of all the testimony, including that of accomplices, is ultimately a question for the jury.

12. **Criminal law ⬅336—Failure to prove venue entitles defendant to acquittal.**

Even though the issue as to venue, raised by the indictment in the plea of not guilty, is sufficient to give the trial court jurisdiction, accused is entitled to an acquittal if proof of venue was lacking.

13. **Criminal law ⬅564(1)—Proof of venue held sufficient against objection first made after verdict.**

The failure of the government to prove expressly the city in which was located a residence designated by street and number. where the bribe was alleged to have been paid, does not require a reversal of the conviction, where the other evidence was sufficient to justify the inference it was located in the city named in the indictment and the question was not raised by defendant until after the verdict.

14. **Witnesses ⬅277(5)—Cross-examination of defendant held proper, though tending to show other offense.**

In a prosecution for giving a bribe to secure immunity for violations of Reed Amendment March 3, 1917, § 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a), where defendant had attacked the motives of the government's witness by charging the witness with unlawful dealings with whisky which defendant claimed he was then transporting for his brother, it was not error to permit cross-examination of defendant to show the transportation of whisky was unlawful, though defendant had been acquitted of a charge of unlawfully transporting it and that offense was not involved in the transaction covered by the indictment, the subject having been introduced on defendant's direct examination.

15. **Criminal law ⬅757(1)—Statement of court's opinion certain testimony of defendant was false held not erroneous.**

Where the court had stated the jurors were not to take his recollection of the testimony, but were to determine the case from their own recollection and return their verdict uninfluenced by any opinion the judge might have about it, a statement by the judge that he did not believe the testimony of defendant as to a transaction with the government's wit-

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ness, because it was contrary to the ordinary conduct of men, was not erroneous.

**16. Criminal law $\Leftarrow$720½—Argument of district attorney defendant should be convicted held not erroneous.**

An argument by the district attorney that if the jurors were good citizens they would give the case fair consideration, and when they did that he believed they would convict the defendant, was not erroneous, since he had a right to tell the jury that in his judgment defendant should be convicted upon the evidence before the court, and his argument would not likely impress the jury that they would be regarded as unworthy citizens if they failed to convict.

**17. Criminal law $\Leftarrow$911, 1156(1)—Ruling on motion for new trial reviewable only for abuse of discretion.**

A motion for new trial in a criminal case is addressed to the sound discretion of the court, and his ruling is not reviewable except for abuse of such discretion.

**18. Bribery $\Leftarrow$7—Proof as to date of offense held not variance from indictment.**

Where an indictment for giving a bribe charged the offense was committed on or about the ———— day of April, A. D. 1919, testimony that it was paid the last of March, or the first of April, 1919, was not a variance.

**19. Criminal law $\Leftarrow$368(3)—Proof witness brought money back after conversation with defendant held part of res gestæ.**

In a prosecution for giving a bribe to a deputy marshal, testimony by the deputy's wife that, after her husband had gone out of the room with defendant, the former came back into the room and handed the witness the sum alleged to have been given as a bribe, was competent as part of the res gestæ.

**20. Criminal law $\Leftarrow$423(7)—Acts of associated persons which are part of res gestæ are admissible against all.**

Where two or more persons are associated for the same illegal purposes, any act or declaration of one of them in reference to the common object and forming part of the res gestæ may be given in evidence, even where the indictment does not charge a conspiracy.

**21. Criminal law $\Leftarrow$368(3)—Declaration of witness defendant paid him money held admissible.**

Where the evidence otherwise showed transactions between defendant and a deputy marshal, whereby the former sought protection for illegal acts, and the marshal's wife had testified that defendant came to the house and asked for the marshal, who went out of the door with him and later came back with a sum of money which he gave to the witness, his wife, it was a natural inference that the money was received from defendant, and a declaration by the marshal to his wife that it was so received was admissible as part of the res gestæ.

**22. Criminal law $\Leftarrow$1169(7)—Admission of declaration not part of res gestæ held not prejudicial.**

The admission of a declaration by a deputy marshal to his wife that the money he gave to his wife had been received from defendant, which was a natural inference from the other circumstances shown in evidence, if erroneous, was not so prejudicial as to require reversal of the conviction notwithstanding an instruction that the statement was competent as corroborative of the testimony of the marshal, but not as substantive proof of the guilt of defendant and that it might be considered in corroboration of the marshal.

**23. Bribery $\Leftarrow$10—Exclusion of evidence as to total amount of bribes received by witness held not error.**

In a prosecution for giving a bribe to a deputy marshal for protection against prosecutions for violation of Reed Amendment March 3, 1917, § 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a), where the marshal

had pleaded guilty to receiving the bribe and had testified to receiving a large number of similar bribes, it was not error to exclude evidence of the total amount of the bribes collected by the witness.

**24. Witnesses ⊜⟹344(1)—Amount of alimony witness paid divorced wife can be excluded.**

In a prosecution for giving a bribe to a deputy marshal who testified for the government and who was shown to have been divorced from his first wife, it was not error for the court to exclude evidence of the amount of alimony paid by the witness to his divorced wife which related only to a collateral matter, so that its admissibility was within the discretion of the trial judge.

**25. Criminal law ⊜⟹441—Requiring defendant to produce affidavit he claimed witness gave him held not error.**

In a prosecution for giving a bribe to a deputy marshal who testified for the government, where defendant had testified in his own behalf that the witness approached him after his arrest and delivered him an affidavit, which the witness claimed came from the office of the United States attorney and endeavored to collect further sums from defendant, it was not error to require defendant on the government's motion to produce the affidavit and to permit the government to prove that it did not come from the district attorney's office.

In Error to the District Court of the United States for the Western District of Tennessee; J. W. Ross, Judge.

Jake Tuckerman, Loftis Wilkes, and Robert Berryman were separately convicted for giving a bribe or bribes to a Deputy United States Marshal, and they each bring error. Affirmed.

Charles M. Bryan, of Memphis, Tenn. (A. G. Brode and Prewitt Semmes, both of Memphis, Tenn., on the brief), for plaintiffs in error Tuckerman and Berryman.

Scott P. Fitzhugh, of Memphis, Tenn. (Stickley & Fitzhugh, of Memphis, Tenn., on the brief), for plaintiff in error Wilkes.

W. H. Fisher, Asst. U. S. Atty., of Memphis, Tenn. (S. E. Murray and A. A. Hornsby, both of Memphis, Tenn., on the brief), for the United States.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. These writs are brought to review judgments upon convictions of the several plaintiffs in error upon indictments under section 39 of the Penal Code (Comp. St. § 10203), for giving a bribe or bribes to one Tyree Taylor, then a deputy United States marshal for the Western district of Tennessee, to insure immunity to plaintiffs in error respectively from prosecution or molestation by the government's officers on account of the violation of the Reed Amendment (Act March 3, 1917, c. 162, 39 Stat. 1058, 1069; Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a). Before the finding of the indictments in question, Taylor had been convicted in another prosecution, upon his plea of guilty, of accepting bribes as such deputy United States marshal, and had been sentenced to imprisonment in the federal penitentiary at Atlanta, Ga. While so imprisoned, he turned state's evidence, and testified for the government on the trial of the cases we are now reviewing, as did also his wife, who had participated

---

with him in the alleged receiving of the bribes in question. The cases reviewed by this opinion, together with others, were tried more or less consecutively in the court below. Several of the important questions here discussed are involved in two or more of the cases before us.

In case No. 3791 (Tuckerman) the charge is bribery in April, 1919. There was conviction as to one of the acts charged. The sufficiency of the indictment is not questioned. The criticisms argued are addressed to the admission and exclusion of testimony, the overruling of motion for new trial for alleged lack of evidence to support the verdict, and the giving and refusal of instructions to the jury.

[1] We think no error was committed in the admission or rejection of testimony. Taylor, testifying for the government, said that he knew defendant as far back as 1917, and in answer to the question, "What business was he engaged in at the time you became acquainted with him?" said, "Well, I never knew Mr. Tuckerman to be engaged in anything else other than handling whisky in some way." This is characterized as an assault upon the reputation and character of defendant before it was put in issue, and as tending to show that he was guilty of another crime than that here charged. We think neither of these objections good. The testimony was naturally preliminary to the detailing of the alleged first interview between defendant and the witness regarding the proposed protection. The fact that defendant had always been in the liquor business was competent and relevant to the subject-matter generally. Grayson v. United States (C. C. A. 6) 272 Fed. 553, 558. It was not made inadmissible merely because of a tendency to show defendant guilty of another offense. Tucker v. United States (C. C. A. 6) 224 Fed. 833, 840, 140 C. C. A. 279, cf. Thaler v. United States (C. C. A. 6) 261 Fed. 746, 750. However, the criticized statement had no necessary tendency to show an unlawful dealing in liquor except as involved in the alleged bootlegging operations in question. The National Prohibition Act (41 Stat. 305) did not take effect until January 16, 1920 (Dillon v. Gloss, 256 U. S. 368, 41 Sup. Ct. 510, 65 L. Ed. 994), and there is nothing to indicate that dealing in liquor was necessarily illegal, either in New Orleans, where defendant seems to have resided before coming to Memphis and when Taylor first knew him, or in Caruthersville, Mo., from which place, according to the charge, the liquor was to be transported.

[2] Complaint is also made that Taylor was permitted to say that he thought his connection with defendant "really began in the fall of 1918," notwithstanding the indictment stated the offense, under a videlicet, as occurring in April, 1919. The date earlier stated was not too remote. A little later the date of the first conversation was given as "somewhere in the early spring of 1919, say in January." The date so given was apparently preliminary to the statement that somewhere about the middle of April a specific proposition of payment for protection was made.

[3] Taylor was asked, on cross-examination, if after his arrest he was handed a list of certain people and had not "said something about practically every man on the list." He answered, "Sure, I know plenty

of fellows that I never said anything about." The witness was then asked whether "you mean to say that you indicted every man in the year 1919 before the statute of limitations ran out * * * that you had any transactions with." This was properly excluded as incompetent. Manifestly the witness had no authority to indict any one. Moreover, defendant was permitted, without objection, to ask whether a named government officer had not read off to the witness a list of people, including defendant, and merely asked "about this one and that one and the other one," and whether the witness did not check off from that list the people that he made "these statements about." The question was answered in the negative.

[4] Upon cross-examination defendant was asked whether he had not been arrested several times on different charges, to which he replied that he had never been convicted of anything, admitting, however, that he had been arrested during the preceding two years for vagrancy. Without deciding whether or not this evidence should have been received against due objection, we think defendant not in position to complain of it. No ground of objection was stated, and in the absence of such statement defendant is not entitled of right to complain. Robinson v. Van Hooser (C. C. A. 6) 196 Fed. 620, 624, 116 C. C. A. 294. The testimony is not so clearly improper or prejudicial as to justify waiving the rule.

[5] Following the charge of the court defendant's counsel asked an instruction that—

"The jury should scrutinize the testimony of accomplices carefully, and they should not believe the testimony of accomplices, and should not convict on the testimony of accomplices, unless it is supported by independent proof."

There was no error in refusing to so instruct. The rule is well settled that while it is the better practice in penal cases for courts to caution jurors against too much reliance upon the testimony of accomplices, and against believing such testimony without corroboration, mere failure to give such instruction is not reversible error. Caminetti v. United States, 242 U. S. at page 495, 37 Sup. Ct. 192, 61 L. Ed. 442, L. R. A. 1917E, 502, Ann. Cas. 1917B, 1168; Ray v. United States (C. C. A. 6) 265 Fed. 257; Rudner v. United States (C. C. A. 6) 281 Fed. 516, 521. Reference to the instruction actually given the jury, as quoted in the margin hereof,[1] shows that the court did not fail in its duty in the respect stated.

---

[1] "In weighing the testimony of the government witnesses look to the fact that the witness Tyree Taylor is at this time incarcerated or serving a sentence in the federal penitentiary at Atlanta for the offense of having accepted bribes while in office as a deputy United States marshal, and the evidence shows he confessed to this and was sentenced upon his confession of this offense. Now, you will look to these facts in weighing his testimony, and you will also look to the fact that he was one of the accomplices in the commission of this offense, if any offense was committed, and that Mrs. Taylor was also a party to any offense, if any offense was committed, and, taking all of these things into consideration you will give to the testimony of the witnesses Tyree Taylor and Mrs. Tyree Taylor such weight and credit as you think it entitled to receive. The fact, gentlemen, that the witness Tyree Taylor might now be serving a sentence in the federal penitentiary and the

[6] Complaint is also made of a refusal of another instruction requested at the close of the charge actually given, viz. that—

"The evidence of the defendant also shows that the prosecuting witness at one time was jealous of the defendant, and sought his life, and the jury should consider that evidence as to whether or not it was a motive actuating the testimony of Mr. and Mrs. Tyree Taylor."

The court had already instructed the jury that—

"In weighing the testimony of the witnesses, you will look further to see what motive, if any, actuated the witness in testifying as he did; if you find that the witness has a motive for testifying against a party, then, as a matter of course, you would take that into consideration in weighing the testimony of such witness, if you find that any motive existed for so testifying; that is, any ulterior motive for so testifying against the party. * * * "

Having given this general instruction, it was not reversible error to decline to call the jury's attention specifically to a given item of testimony whose tendency was claimed to show motive.

In the charge the judge, after stating that the jurors were not to be influenced by anything that he might say to them in recounting the testimony, or by any opinion which they think he might have or which he might express about the case, because these matters must be determined by the jurors, uninfluenced by anything that they might believe the judge thought or which he might express about the case, added:

"But I say to you frankly, gentlemen, that I have examined the testimony closely; that I was unable to find any motive on the part of the government witnesses Tyree Taylor and his wife to prompt them to testify as they did, if they were not testifying to the truth; but that is simply my opinion about it, and you are not to be influenced by it in one way or the other or be governed by it in making up your verdict, but you are to determine the case according to your own recollection of the testimony and the weight you think should be given to it."

After the jury had retired to consider its verdict, it returned into court and reported that it could not agree, whereupon it was sent back for further consideration. After deliberating several hours more, the jurors again returned, with the statement that they had not agreed. After giving certain instructions, the court added:

"As the court stated to you yesterday, any opinion the court may have about this case is not to be considered by you one way or the other. The court was clearly of the opinion then, and is of the opinion now, that these government witnesses are trying to tell the truth about this transaction, but that is merely my private opinion and is not to influence you gentlemen in any way. You gentlemen retire and further consider your verdict."

[7] These expressions of opinion are criticized as improper and as amounting to a direction to the jury to bring in a verdict of guilty.

fact that he and his wife, Mrs. Taylor, have been accomplices of any offense that was committed, if any was committed, will not warrant you in *arbitrarily* disregarding the testimony of these witnesses, but, it does call upon you to examine more closely than you would the testimony of a witness against whom no such cloud rests, or against whose conduct no such charge has been made, but, it will not warrant you in *arbitrarily* casting aside or disregarding their testimony." (All italics ours.)

We think this criticism unwarranted. It is the well-settled rule in the courts of the United States that a trial judge may express his opinion to the jury provided the latter is given clearly to understand that the jurors are not bound by the judge's opinion but are free to exercise their own judgment. As said in Rucker v. Wheeler, 127 U. S. 85, 93, 8 Sup. Ct. 1142, 1146 (32 L. Ed. 102):

"It is no longer an open question that a judge of a court of the United States, in submitting a case to the jury, may, in his discretion, express his opinion upon the facts; and that 'when no rule of law is incorrectly stated, and all matters of fact are ultimately submitted to the determination of the jury,' such expressions of opinion are not reviewable on writ of error. Vicksburg, etc., Railroad v. Putnam, 118 U. S. 545, 553; St. Louis, etc., Railway v. Vickers, 122 U. S. 360; U. S. v. Reading Railroad, 123 U. S. 113, 114."

See, also, Lovejoy v. United States, 128 U. S. 171, 173, 9 Sup. Ct. 57, 32 L. Ed. 389; Doyle v. Railway Co., 147 U. S. 413, 430, 13 Sup. Ct. 333, 37 L. Ed. 223; Allis v. United States, 155 U. S. 117, 123, 15 Sup. Ct. 36, 39 L. Ed. 91; Graham v. United States, 231 U. S. 474, 480, 34 Sup. Ct. 148, 151 (58 L. Ed. 319), where it is said:

"In the courts of the United States the judge and jury are assumed to be competent to play the parts that always have belonged to them in the country in which the modern jury trial had its birth."

Compare Horning v. District of Columbia, 254 U. S. 135, 138, 139, 41 Sup. Ct. 53, 65 L. Ed. 185. We have had frequent occasion to apply this rule. See Young v. Corrigan, 210 Fed. 442, 443, 127 C. C. A. 174; Shea v. United States, 251 Fed. 433, 445, 446, 163 C. C. A. 451; Id., 251 Fed. 445, 163 C. C. A. 458; Calcutt v. Gerig (C. C. A.) 271 Fed. 220, 224; Sylvia v. United States (C. C. A.) 264 Fed. 593, 596. The rule which permits the trial judge to express his opinion upon the facts is subject to the qualifications: First, that the ultimate decision upon the facts be left to the jury; and, second, that the judge's comments be judicial and dispassionate, and so carefully guarded that the jurors, who are the triers of the fact, may be left free to exercise their independent judgment, in other words, that their judgment be not coerced. Starr v. United States, 153 U. S. 614, 626, 14 Sup. Ct. 919, 38 L. Ed. 841; Sandals v. United States (C. C. A. 6) 213 Fed. 569, 573, et seq., 130 C. C. A. 149; Stokes v. United States (C. C. A. 8) 264 Fed. 18, 24, et seq.; Shaffer & Co. v. West Tennessee Grain Co. (C. C. A. 6) 271 Fed. 820, 824.

[8] As we have already said, the ultimate decision was in clear and unambiguous terms left to the jury. We think it cannot be said that the court's expression amounted to or could properly have been considered by the jury as a direction to bring in a verdict of guilty. Nor are we impressed that his comments were other than judicial and dispassionate. In Shea v. United States, supra, and in Calcutt v. Gerig, supra, the instructions which by this court were held not erroneous were fully as pointed as in the instant case.

[9] It is urged, however, that the judge has no right to express his opinion after the jury has once retired, and has reported its failure to agree. A majority of the court is unable to agree with this contention. We are aware that such is the holding of one of the Circuit

Courts of Appeals in Garst v. United States, 180 Fed. 339, 103 C. C. A. 469; and in Foster v. United States, 188 Fed. 305, 110 C. C. A. 283; but we think this holding overlooks the decision of the Supreme Court in Simmons v. United States, 142 U. S. 148, 155, 12 Sup. Ct. 171, 35 L. Ed. 968, which, so far as we have found, has not been overruled or criticized. In the Simmons Case, when the jury came into court the next day after the case had been submitted to it, the court said (142 U. S. 151, 12 Sup. Ct. 172, 35 L. Ed. 968):

"I cannot understand the failure to agree arises from any difference of opinion based upon the insufficiency of the evidence in this case. Whenever in the opinion of the court the testimony is convincing, it is the duty of the court to hold the jury together. Therefore I must decline your request to be discharged."

This instruction seems to have been treated as equivalent to an expression of opinion that the evidence was sufficient to convict. In holding the instruction not erroneous the Supreme Court said (142 U. S. 155, 12 Sup. Ct. 172, 35 L. Ed. 968):

"But at the outset of his charge he [the judge] had told them, in so many words, that the facts were to be decided by the jury, and not by the court. And it is so well settled, by a long series of decisions of this court, that the judge presiding at a trial, civil or criminal, in any court of the United States, is authorized, *whenever*[2] he thinks it will assist the jury in arriving at a just conclusion, to express to them his opinon upon the questions of fact which he submits to their determination, that it is only necessary to refer to two or three recent cases *in which the judge's opinion on matters of fact was quite as plainly and strongly expressed to the jury as in the case at bar.*" citing the Vicksburg (118 U. S. 545, 7 Sup. Ct. 1, 30 L. Ed. 257), Reading (123 U. S. 113, 8 Sup. Ct. 77, 31 L. Ed. 138) and Lovejoy Cases.

[10] In the instant case when the jury returned before rendering its verdict the foreman suggested a conflict in the testimony as to the number of cases of liquor defendant's boat brought in. The court replied that it would not be a material conflict whether the witness stated that the boat brought in 300 or 400 cases. This was not error. If, as defendant contends, his boat was so fitted and used that it could not well carry either of those amounts at one trip, it was immaterial which of the two amounts was testified to.

[11] It follows from what has been already said that there is no merit in the contention that the verdict is not supported by the evidence, but rests upon the uncorroborated testimony of accomplices. The credibility of all testimony, including that of accomplices, was ultimately for the jury. If Taylor and his wife were believed there was abundant evidence to sustain the conviction.

In the opinion of the majority of the court, the judgment should be affirmed.

[12, 13] In No. 3810 (Wilkes) plaintiff in error was convicted on one of the two counts of bribery charged. The only witnesses for the government were Tyree Taylor and Mrs. Taylor; plaintiff in error was the only witness on his behalf. Under an assignment that "there is no substantial evidence to support the verdict," plaintiff in error

[2] All italics in this opinion ours.

contends that there was no proof that the alleged bribery was committed in "Memphis, Shelby county, Tenn." (which is the place charged in the indictment), and thus within the jurisdiction of the court. The issues raised by the indictment and the plea of not guilty gave the court jurisdiction to try the case, although defendant was of course entitled to acquittal if proof of venue was lacking. Moran v. United States (C. C. A. 6) 264 Fed. 768. The objection that the venue was not proved was first raised in this court. Assuming, for the purposes only of this opinion, that the contention in question is presentable under the assignment invoked, we think it without merit. The specific proposition is that the testimony was only that the payment was made at 283 Union avenue, and counsel say there is no proof that that address was in Memphis. This criticism is apparently merely technical. Taylor's testimony was that he lived at 1916 Madison, in Memphis. It was the testimony of both Taylor and Mrs. Taylor that the latter (who was Mrs. Harris before she married Taylor on May 14, 1919) lived at 283 Union avenue, and that he was in the habit of taking his suppers there with her. The payment of which plaintiff in error was convicted was alleged to have been made at her apartment and in her presence, on a Sunday morning while she was preparing dinner. It is impossible to read the testimony without a clear inference that No. 283 Union avenue was in the city of Memphis. In answer to a question as to her former home before she came to Memphis, Mrs. Taylor stated that she came directly from Grostock, La., "to Memphis." The natural inference from the testimony is that 283 Union avenue and 1916 Madison were near together. For instance, Taylor testified that on the morning of the payment he "left 1916 Madison and came by 283 Union and then came to the Custom House." Had the question of lack of proof of venue been raised on the trial, it cannot be doubted that specific statement that 283 Union avenue was in Memphis would readily have been forthcoming. There is no reason to apprehend that its lack has produced a failure of justice. It is thus too late to raise the question here. Lockhart v. United States (C. C. A. 6) 264 Fed. 14, 16–17. The suggestion that the charge was faulty in not including, within the facts to be shown beyond reasonable doubt, that the offense was committed in Memphis, is thus presumably without substance. Not only was there no request so to instruct, but no exception was taken to the charge in that respect.

Nor do we see any merit in the complaint of refusal to set aside the verdict, either because not supported by the evidence or because "supported only by the uncorroborated statements of accomplices."

[14] Apparently for the purpose of showing a motive for Taylor's accusation of bribery against him, plaintiff in error testified that at a time previous to the alleged bribery he had been tried and acquitted in the district court on a charge of violating the Reed Amendment, and that the district judge had ordered returned to him the whisky seized in connection with his arrest; that the whisky in some way got to Tyree Taylor and that the latter asked plaintiff in error not to come for the whisky because it had been taken out of the storeroom and sold by Taylor, and if plaintiff in error tried to get it out "it would cause a

big stink and he [Taylor] would lose his job"; that later, in a conversation back of the Peabody Hotel, Taylor accused defendant of telling about the whisky, saying, "I know all about it and I will get you." Upon cross-examination defendant said that he was carrying the whisky in question to New Orleans, to his brother, who owned it. To a question by the government's counsel, "There was plenty of whisky down there at that time?" objection was made, the court saying, "Go ahead." The criticism is that the district attorney was trying to show that defendant had been engaged in the unlawful business of transporting liquor (after acquittal thereof), and invokes the general rule of inadmissibility of evidence of other offenses. The case does not call for the application of that rule. Plaintiff in error voluntarily introduced the subject. The cross-examination had was strictly germane to the subject of the direct examination, and bore directly upon the credibility of the defendant. Compare Fisk v. United States (C. C. A. 6) 279 Fed. 12, 16, 17. If the cross-examination served to prejudice the jury against plaintiff in error, neither the government nor the trial judge were in fault for that.[3] The court called attention to this testimony of plaintiff in error in connection with the latter's denial of the charges of bribery made against him, saying, that if such are the facts (that is, the defendant's assertions recited), or if the jurors believed them to be the facts, or had a reasonable doubt as to whether or not the testimony of the defendant was true, they should acquit him.

[15] Later, after stating that the jurors were not to take his recollection of the testimony of the witness, but were to determine the case from their own recollection, and return such verdict as they thought warranted, irrespective of and uninfluenced by any opinion the judge might have about it, or the testimony as he might have recited it to them, added:

"I will say to you, however, that I do have certain ideas about this case, not for the purpose of influencing you, but simply expressing my opinion about the facts of this case, and one of them is that I do not believe, gentlemen, the testimony of this defendant relative to the conversation which he relates as having had with Tyree Taylor near the Peabody Hotel. It, to my mind, is not reasonable. To my mind it is not according to the ordinary conduct of men, and I do not believe any part of that testimony. As a matter of fact, gentlemen, I have endeavored to listen carefully and closely to the testimony of Tyree Taylor and his wife to ascertain, if possible, any motive they might have for undertaking to testify as they have against this defendant, unless it be that their testimony is true. I have been unable, so far as I am concerned, to find any motive that would actuate them to testify falsely against this defendant. But that is simply my opinion about this matter, and not to be considered by you gentlemen because you are the ones that must determine the guilt or innocence of this defendant."

In the opinion of the majority of the court there was no error in this instruction, which does not impress us as being impassioned, un-

---

[3] On cross-examination, Taylor had already denied that the court ordered that the liquor be returned to defendant or that he (Taylor) had obtained or sold liquor from the Federal Building; and had pronounced false and absurd the suggestion that he had told defendant not to insist upon getting the liquor back and that he (Taylor) had sold it.

judicial, unduly argumentative, or as tending to control or compel the jury's verdict. We need only refer to the authorities already cited respecting the right of a trial judge to express his opinion to the jury.

[16] In the course of his argument to the jury the district attorney said:

"Gentlemen, if you are good citizens and honest men, and I know you are, you will give this case a fair consideration, and when you do this I believe you will convict the defendant."

On objection by defendant's counsel, the court said, "That is proper argument." We think this not error. Prosecuting counsel had the right to tell the jury that in his judgment a defendant should be convicted upon the evidence before the court. Nichamin v. United States (C. C. A. 6) 263 F. 880, 882. Compare Billingsley v. United States (C. C. A. 6) 274 Fed. at pages 92, 93. The argument that the effect of the incident was to impress the jury that they would be regarded by the district attorney and by the trial judge "as unworthy citizens and dishonest men if they failed to convict the defendant" is in our opinion far-fetched.

[17] The motion for new trial was addressed to the sound discretion of the court, which is not reviewable except for abuse thereof, which does not appear. Robinson v. Van Hooser, supra, 196 Fed. 620, 627, 116 C. C. A. 294.

In the opinion of the majority of the court the judgment of the District Court should be affirmed.

In case No. 3826 (Berryman), defendant was convicted of paying a bribe of $300 to Tyree Taylor "the last of March or the first of April, 1919," to use the language of both Taylor and Mrs. Taylor. The criticisms argued relate to the admission and exclusion of testimony, the overruling of motion for new trial, and the instructions given the jury. In this case, as in the preceding cases, the conviction is assailed as based upon the uncorroborated testimony of accomplices. It is unnecessary to discuss this question, which is already covered by what we have said in case No. 3791, supra.

The same is true as to the court's expression of opinion that Tyree Taylor and his wife were trying to tell the truth, and that the court was inclined to believe their testimony, rather than that of the defendant. The charge in this respect is no more favorable to the government than was the charge in the Tuckerman case, unless in the addition of the statement that—

"If they [Tyree Taylor and wife] had been endeavoring to swear falsely, the money could just as well have been said to have been paid in the presence of both as in the presence of one."

We think this furnishes no sufficient ground for predicating error.

[18] It scarcely need be said that there is no merit in the suggestion of variance between the indictment and the proof, in the fact that the former charges the bribery to have been committed "on or about the ———— day of April, A. D. 1919," whereas the testimony is as already stated.

The charge of error in refusing to grant a new trial, and the alleged lack of evidence to support the verdict, as well as the charge that the latter was contrary to law, are without merit, for the reasons already discussed in the Tuckerman case.

Both Tyree Taylor and Mrs. Taylor testified that on the occasion in question defendant called at Mrs. Harris' home in the evening and asked for Taylor; that the latter, as stated by Mrs. Taylor, "went out to see him [Berryman] and met him at the door and they closed the door." Tyree Taylor testified that defendant stated that he did not want to give the money in the presence of Mrs. Harris (now Mrs. Taylor), and that accordingly they went to the bathroom, at the further end of the hall, and shut the door, whereupon defendant gave Taylor $300. Both Taylor and Mrs. Taylor testified that when the former came back into the room he handed the latter $300, with the statement that Berryman had given it to him. This testimony is challenged as incompetent, as being a conversation not in defendant's presence but a self-serving declaration by Taylor. The only feature of this testimony which can plausibly be criticized as incompetent is that Taylor said that defendant gave him the money.

[19, 20] It was plainly competent to show, as part of the res gestæ, that the money was brought back by Taylor from his conversation with defendant, and that he handed it to Mrs. Harris. Baron v. United States (C. C. A. 6) 286 Fed. at page 826. It would then have been not only a permissible, but the natural, inference therefrom that defendant had paid the money in question to Taylor, in view of the testimony of the transactions in which Taylor was then engaged, the asserted nature of defendant's business generally, the secrecy alleged to have been adopted by him in this immediate transaction, and the disposition then made of the money. It is the general rule that where two or more persons are associated for the same illegal purpose, and even where the indictment does not charge conspiracy, any act or declaration of one of the parties in reference to the common object, and forming part of the res gestæ, may be given in evidence. American Fur Co. v. United States, 2 Pet. 358, 365, 7 L. Ed. 450; Nudd v. Burrows, 91 U. S. 426, 23 L. Ed. 286.

[21, 22] In a very proper sense, Taylor and defendant, according to the tendency of the government's proofs, were engaged in a conspiracy. In our opinion the apparently natural and inferably impulsive statement alleged to have been made by Taylor when exhibiting the money that Berryman had paid it, whether or not technically classified merely as part of the res gestæ, was admissible. It was a contemporaneous statement directly relevant to the primary fact of Berryman's payment of money, a fact not only natural, but important to be stated to Mrs. Harris, who was to give clearances. This situation tended to negative a self-serving purpose on Taylor's part. The otherwise natural inference from the connected facts above detailed, that defendant had paid the money, was thus corroborated. But if the criticized testimony went too far in the respect stated, we think it not so prejudicial as to require reversal, notwithstanding the instruction given in the charge that Mrs. Taylor's testimony as to Taylor's statement where he got the

money "is competent as going in corroboration of the testimony of Tyree Taylor, but not as substantive proof of the guilt or innocence of the defendant," and that it might be considered as evidence "in corroboration of the testimony of the witness Taylor, in other words, as going to his credibility as a witness." See Johnson v. United States (C. C. A. 6) 281 Fed. 536, 537. In this connection it may be said that the defendant admitted that, in spite of the fact that it was at the time unlawful to sell liquor in Tennessee for beverage purposes (Laughter v. United States [C. C. A. 6] 259 Fed. 94, 170 C. C. A. 162), he was conducting a roadhouse in the spring of 1919 near Memphis, and was there selling liquor over the bar in violation of law, claiming, however, that as a rule he bought his whisky from people in Memphis, including some from Tyree Taylor, instead of bringing it in from outside the state, and that it was unnecessary to bribe Taylor because he could buy from him, and perhaps from others, all the liquor he wanted. He also admitted that he had been recently convicted of bringing in liquor from Kentucky in 1918. He also said he knew numerous people bringing whisky into Memphis in the spring of 1919, and had heard that Taylor was protecting them, although he claims not to have had personal knowledge of the latter fact.

[23, 24] We see no error in the refusal to permit defendant to show on Taylor's cross-examination the total amount of his bribery collections. He had already indicated that the aggregate was very large, especially in the statement that accumulations were taken to a safety deposit box as often as they reached $4,000 or $5,000. If, as defendant's counsel states in brief, Taylor "seemed to glory in the recounting of his misdeeds," the exclusion of evidence of the approximate amounts of bribery receipts would scarcely be prejudicial. The amount of alimony being paid by Taylor under settlement with his divorced wife we think likewise immaterial. However much the fact that his former wife procured a divorce on account of his misconduct may have reflected upon his character and credibility, the precise amount of alimony paid was not important. It related only to a collateral matter. The trial judge is vested with a substantial measure of judicial discretion in respect to such matters, and we think no abuse is here shown.

[25] Upon redirect examination as a witness in his own behalf defendant testified, in substance, that instead of his approaching Taylor (as the latter testified) after Taylor's arrest, and while he was in custody, Taylor approached him, and delivered to him an affidavit which defendant claims that Taylor told came from the office of the United States attorney, as evidence that Taylor was in position to assist Berryman in return for further payments requested of the latter. Thereupon the court, on motion of the district attorney, required defendant to produce the affidavit referred to. We see no error in this, nor in the admission of the evidence of a clerk from the district attorney's office that the paper in question did not come from that office. We think the paper not rendered inadmissible by the fact that defendant did not produce testimony that it had actually emanated from that office, but only that Taylor had so claimed. It still had relevancy.

Finding no reversible error in the proceedings below, the judgment of the District Court should be affirmed.